UNINSURED EMPLOYERS' FUND *v.*
ARTHUR ELLIS BOOKER

[No. 265, September Term, 1971.]

*Decided December 13, 1971.*

The cause was argued before MORTON, ORTH and POWERS, JJ.

*William R. Levasseur, Special Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General* on the brief, for appellant:

*Sidney Schlachman,* with whom were *Bernard A. Raum* and *Gomborov, Steinberg, Schlachman & Harris* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

Arthur Ellis Booker sustained an accidental injury on February 2, 1968, in the course of his employment by Bernie Moore, who conducted a fuel oil business in Baltimore. While delivering fuel oil for Moore, Booker was robbed. He suffered a broken jaw and lost a number of teeth in the course of the robbery.

The Workmen's Compensation Commission ordered Moore to pay to Booker "* * * compensation for temporary total disability at the rate of $53.33, payable weekly * * *" for about two months, and thereafter ordered him to pay "* * * compensation for permanent partial disability at the rate of $25.00, payable weekly, beginning April 3, 1968 for a period of 40 weeks, and pay the medical expenses as hereinabove set forth." The medical expenses set forth amounted to approximately $800.00.

Moore did not make the payments, nor did he provide or secure their payment as he was required by Maryland Code, Art. 101, §§ 15 and 16 to do. He carried no compensation insurance. The Uninsured Employers' Fund, created by Acts of 1967, ch. 152, was duly notified. That Fund, through a Special Assistant Attorney General, appeared and agreed to pay the "compensation", but declined to pay the medical expenses. After a hearing on

the issue the Commission ordered, on August 25, 1970, that the medical bills are not payable by the Fund.

From that order Booker entered an appeal to the Superior Court of Baltimore City. There Judge Harry A. Cole, on motions for summary judgment and agreement that there was no dispute as to the facts, ruled as a matter of law that the "* * * medical benefits are included in the term compensation and should be paid since included in the award." The Uninsured Employers' Fund appealed to this Court.

Appellant argues that it is not responsible for payment of medical benefits because the term "compensation" does not include medical benefits. The outcome of this case turns directly upon the correctness of that premise. Appellant points to several references in the subtitle, "Uninsured Employers' Fund", Code, Art. 101, §§ 90-102, such as "payment of compensation awards", "claim for compensation", "default in payment of compensation", "compensation awarded" and "has failed to secure compensation", and argues that "compensation" refers to payments ordered in accordance with the schedules in Art. 101, § 36, while medical benefits ordered under Art. 101, § 37, are in addition to and separate from "compensation". Based upon that distinction, appellant contends that the General Assembly, in enacting the subtitle, intended that only compensation (in the limited sense) be paid by the Fund, and intended that medical benefits not be paid by the Fund.

Supporting its interpretation attributing a limited meaning to the word compensation, appellant cites *A. G. Crunkleton v. Barkdoll*, 227 Md. 364, 177 A. 2d 252, and *Andrews v. Decker*, 245 Md. 459, 226 A. 2d 241. These cases clearly limit themselves to holding that the power of the Commission to modify or change its orders upon application made within three (now five) years next following the last payment of compensation [under present § 40 (c)] imposed no time limitation upon the Commission's power to order payment of medical and related

expenses, in the face of the requirement of § 37 (a) that such benefits be provided "* * * for such period as the nature of the injury may require * * *".

To answer the question posed, we must examine Art. 101 in its entirety. We said in *Subsequent Injury Fund v. Chapman,* 11 Md. App. 369, 274 A. 2d 870, at page 375:

> "Statutes which relate to the same thing or general subject matter, and which are not inconsistent with each other are in *pari materia,* and should be construed together so that they will harmonize with each other and be consistent with their general object and scope, even though they were passed at different times and contain no reference to each other. * * * Consistent with this established rule of statutory construction, we think all Sections of the Workmen's Compensation Law (Article 101) must be read and considered together in arriving at the true intent of the Legislature, as they form part of a general system * * *."

We must ascertain the legislative intention and place it into effect, bearing in mind the rule that where there is ambiguity in the compensation law the uncertainty should be resolved in favor of the claimant. *Subsequent Injury Fund v. Chapman, supra, Board of County Commissioners v. Fleming,* 13 Md. App. 261, 282 A. 2d 512, Code, Art. 101, § 63.

Examination of the entire article, and including §§ 90-102, makes inescapable the conclusion that the legislature used the word "compensation" sometimes in a limited sense, referring to the payments called for by the schedules in § 36, but more frequently in a broad sense, referring to all benefits provided in the article. Which meaning is intended by a particular use of the word must be determined in each case by the context in which it is used.

For example, the very title of the article is "Workmen's Compensation". Section 15 begins:

> "Every employer subject to the provisions of this article, shall pay or provide as required herein *compensation* according to the schedules of this article * * *."

The next paragraph says:

> "The liability prescribed by the last succeeding paragraph shall be exclusive, except that if an employer fails to secure the payment of *compensation* for his injured employees and their dependents as provided in this article, an injured employee * * * may, at his option, elect to claim *compensation* under this article, or to maintain an action in the courts for damages * * *." (Emphasis added).

Section 16 requires that the employer "secure compensation to his employees" by insuring the "payments of such compensation" in the State Accident Fund, or an insurance company, or by qualifying as a self-insurer. Throughout the subsections of § 16 are numerous references to the "payment of compensation specified in this article". Nowhere in the section is any distinction drawn between periodic payments according to a schedule, and other benefits provided in the article. Section 18 provides that every policy for the insurance of compensation shall be deemed to be made subject to the provisions of the article, and that the form of any such policy must be approved by the Workmen's Compensation Commission.

Although the purpose of §§ 15 and 16 is to assure that employers provide and secure the payment of "compensation" to eligible employees and their dependents, it seems too obvious for discussion that the reach of those sections extends to all benefits provided in the article, and that the word "compensation" is used in a broad, not a limited, sense.

Section 21, which defined extra-hazardous employments prior to its repeal by Acts of 1971, ch. 119, said, "Compensation provided for in this article shall be pay-

able for injuries sustained or death incurred by employees engaged in the following extra-hazardous employments: * * *", using the word "compensation" in its broad sense. In §§ 22 through 30, dealing with occupational diseases, are found repeated references such as, "* * * entitled to compensation in the amount and in the manner provided elsewhere in this article * * *", without distinction between periodic payments and medical or other benefits.

Section 38 requires timely notice to the employer "* * * of any injury for which compensation is payable under this article * * *", and § 39 (a) provides that:

> "When an employee is entitled to benefits under this article, he shall file with the Commission his application and the report of his physician, provided he was attended by a physician of his own selection, within sixty days after the date of his accidental injury, for which compensation is claimed * * *."

In the context of § 39 (a) it appears that "benefits under this article" and "compensation" are used synonymously.

Section 40 (a) requires the Commission to investigate any claim, hold a hearing if requested, and "* * * make or deny an award, determining such claim for compensation * * *". Section 48 provides that "No *compensation* shall be allowed for three calendar days after the beginning of disability, *except* disbursements herein authorized for *medical, nurse and hospital services* and medicines and for funeral expenses * * *." (Emphasis supplied).

Section 62 imposes upon a principal contractor the duty to pay to any workman employed by a subcontractor "* * * any compensation under this article which he would have been liable to pay if that workman had been immediately employed by him * * *".

Section 64 lists presumptions which apply "In any

proceeding for the enforcement of a claim for compensation under this article * * *".

We turn to consideration of the sections included in the subtitle, Uninsured Employers' Fund, Code, Art. 101, §§ 90-102. We find nothing inconsistent with the broad meaning which we have concluded the legislature intended the word "compensation" to have generally throughout the article. Section 91 provides, "There is hereby created a fund * * * to provide for the payment of *awards* against uninsured defaulting employers * * *". Section 90 states that when a *claim for compensation* is filed, and the employer fails to pay or secure payment, "* * * the *award* shall be payable out of the fund * * *". (Emphasis added). Section 100 states:

> "The liability of the Commission, the State Treasurer, the fund and the State of Maryland with respect to payment of any compensation, benefits, expenses, fees or disbursements properly chargeable against the fund shall be limited to the assets in said fund and they shall not otherwise in any way or manner be liable for the making of any such payment."

Significant to appellant's interpretation of the law are §§ 36 and 37, which contain the requirements for scheduled payments and payment of medical and related expenses. The introductory paragraph in § 36 reads:

> "Each employer [employee] (or in the case of death his family or dependents) entitled to receive compensation under this article shall receive the same in accordance with the following schedule and except as in this article otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever."

The section then goes on to fix the formulae for various amounts of compensation, generally related to the nature of the injury and the extent and duration of disability.

Subsection (a) of § 37 says:

> "In addition to the compensation provided for
> herein the employer shall promptly provide for
> an injured employee, for such period as the na-
> ture of the injury may require, such medical,
> surgical or other attendance or treatment, nurse
> and hospital services, medicines, crutches, ap-
> paratus, artificial hands, arms, feet and legs
> and other prosthetic appliances as may be·re-
> quired by the Commission, provided, however,
> that any order or award of the Commission, un-
> der this subsection, shall not be construed to re-
> open any case, or permit any previous award to
> be changed or modified, except as provided in §
> 40 (c) and 40 (d) of this article."

We find it reasonable to conclude that *with respect to
each other,* §§ 36 and 37 use the word "compensation"
in a limited sense. We find it equally reasonable to con-
clude that such limited meaning does not attach to the
word "compensation" elsewhere in the article, unless in-
dicated by the context, and that all of the benefits of §§
36 and 37 are included within the broad meaning of
"compensation".

It is perhaps most significant of all that the article it-
self defines the word "compensation" in § 67 (5) as fol-
lows:

> " *'Compensation'* means the money allowance
> payable to an employee or to his dependents as
> provided for in this article, and includes funeral
> benefits provided therein."

The employer's obligation to pay funeral expenses is
covered in § 37 (d), following the subsections providing
for medical, surgical, hospital and other related expenses.
It is thus clear to us that the legislature intended the
word compensation to include medical benefits.

The order of the lower court was correct.

*Order affirmed.*
*Appellant to pay costs.*