## ROBERT COGLEY *v.* SCHNAPER & KOREN CONSTRUCTION CO. ET AL.

[No. 398, September Term, 1971.]

*Decided February 4, 1972.*

The cause was argued before ANDERSON, MOYLAN and GILBERT, JJ.

Submitted on brief by *Charles E. Chlan* for appellant.

Argued by *Charles R. Goldsborough, Jr., Assistant Special Attorney,* with whom were *Francis B. Burch, Attorney General,* and *J. Howard Holzer, Special Attorney for the State of Maryland,* on the brief, for appellees.

GILBERT, J., delivered the opinion of the Court.

The issue presented in this appeal is whether or not an award of the Workmen's Compensation Commission may be collaterally attacked in a court of law.

A workman, Robert Oscar Boothe (Boothe) filed a claim with the Workmen's Compensation Commission against the appellant, Robert Cogley (Cogley), alleging that the claimant had sustained an accidental personal injury arising out of and in the course of his employment on the 14th of August, 1967. Cogley filed an employer's report, and the Commission issued an award for temporary benefits in favor of Boothe and against Cogley, a non-insured employer. Inasmuch as Cogley was a subcontractor for Schnaper & Koren Construction Company, Boothe filed a second compensation claim against the appellee, Schnaper & Koren Construction Company as his

statutory employer under the provisions of Article 101, § 62. That section provides:

"§ 62. Employees of subcontractor may claim against contractor.

When any person as a principal contractor, undertakes to execute any work which is a part of his trade, business or occupation which he has contracted to perform and contracts with any other person as subcontractor, for the execution by or under the subcontractor, of the whole or any part of the work undertaken by the principal contractor, the principal contractor shall be liable to pay to any workman employed in the execution of the work any compensation under this article which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal contractor, then, in the application of this article, reference to the principal contractor shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed.

"Where the principal contractor is liable to pay compensation under this section, he shall be entitled to indemnity from any employer, who would have been liable to pay compensation to the employee independently of this section, and shall have a cause of action therefor against such employer.

"Nothing in this section shall be construed as preventing a workman from recovering compensation under this article from the subcontractor instead of from the contractor.

"Whenever an employee of a subcontractor files a claim under this article against the prin-

cipal contractor, the principal contractor shall have the right to join the subcontractor or any intermediate contractors as defendant or codefendant in the case."

A hearing was conducted before the Commission on October 10, 1967, and by its "Award of Compensation" dated January 25, 1968 the Commission found both Cogley and the appellees to be "jointly and severally liable for the payment of compensation resulting in this case; * * *" and awarded to Boothe temporary total disability for the period beginning August 15, 1967 through November 7, 1967. As the result of another hearing before the Commission on October 6, 1970, that agency found that Boothe was entitled to additional temporary total disability and that he had sustained a "50% industrial loss of use of his body as a result of the injury to his back which makes a total of 250 weeks of compensation due for permanent partial disability and in accordance with Section 36, Sub-section 4 of Article 101 the claimant has a serious disability and is therefore entitled to 333 weeks of compensation at the rate of $40.00 per week." Payment to Boothe by Cogley and appellee was accordingly ordered on October 27, 1970. No appeal was noted from that decision.

On April 2, 1970, five months prior to the Commission's hearing of October 6, 1970, the appellees filed suit against Cogley in the Circuit Court for Baltimore County pursuant to the provisions of Article 101, § 62, supra, claiming $25,000.00.[1] In their suit they alleged that "as

---

1. The amount claimed in the suit was $25,000.00. Cogley's brief refers to the sum of $26,438.14. Judge MacDaniel in his memorandum opinion alludes to the total of $26,435.18. We have no knowledge of the amount of medical expenses incurred so we have not endeavored to calculate the exact dollar amount of the award. The judgment, however, was for $25,000.00. No question has been raised here or in the trial court as to whether the appellees are entitled to judgment for the total sum expected to be paid or merely for the amount actually accrued as of the time of the hearing before the trial judge. The latter course could result in two or more suits in order to obtain judgments against Cogley aggregating the amount paid by the appellees. Since the question is not before us, we express no opinion thereon.

a result of the award of compensation of the Workmen's Compensation Commission as aforesaid, Schnaper & Koren Construction Co., principal contractor, and State Accident Fund, its insurer, were obligated to pay, are obligated to pay and will continue to be obligated to pay temporary total disability payments, medical, hospitalization and other medical bills." To appellees' declaration, Cogley filed a general issue plea. On January 12, 1971 the appellees, pursuant to Rule 421, served upon Cogley a request for admission of the genuineness of certain documents, viz., the award of the Commission dated January 25, 1968, and its supplemental award of October 27, 1970. Cogley agreed that the documents were genuine. The matter was then heard before Judge H. Kemp Mac-Daniel on March 17, 1971. Cogley asserted, through his counsel, that Boothe was a "part time" employee at the time of his accidental injury and sought to offer evidence to that effect. Cogley further asserted that he was not notified of the hearings before the Commission except that, "He received notice of the first two things and that is all." [2] After hearing argument of counsel, Judge MacDaniel declined to receive testimony from Cogley for the reason that the decision of the Workmen's Compensation Commission had not been appealed, was, therefore, final, and not subject to collateral attack. We agree with Judge MacDaniel.

Article 101, § 56, provides in pertinent part:

"Any employer, employee, beneficiary or person feeling aggrieved by any decision of the Commission * * *, may have the same reviewed by a proceeding in the nature of an appeal * * *."

We note, as did the trial judge, that no appeal from the Commission's decision was taken.

In 100 C.J.S. Workmen's Compensation § 657a., it is stated:

---

2. There is nothing in the record to indicate what were the "first two things" albeit the identity of such "things" is not critical to a decision in this case.

"Subject to a timely exercise of the rights, if any exist, of review, modification, or reopening the judgment or award, it is conclusive and binding as to all matters adjudicated, and matters which the parties might, by exercising reasonable diligence, have brought forward at the hearing may also be concluded.

Article 101, § 56, provides a vehicle for review of the decisions of the Workmen's Compensation Commission, but Cogley did not avail himself of the relief authorized by that section. He seemingly was content to abide by the decision of the Commission, until the previously filed suit was pressed against him for reimbursement of the monies that the appellees had been called upon to pay, as well as those sums for which appellees will subsequently be required to pay to the claimant Boothe. It is difficult to understand why Cogley did not appeal the decision of the Commission dated October 27, 1970, a period of time approximately 5 months and 25 days after suit had been filed against him by the appellees, and by which he was placed on clear notice of the relief sought by appellees, and the reasons therefor.

Cogley failed to maintain a direct assault upon Boothe's claim or upon the decision of the Commission, but instead chose, albeit incorrectly, to endeavor to collaterally attack the decision of the Commission.

It has long been held that the courts of this state,

"* * * should not aid in any attempt to circumvent the State Industrial Accident Commission [now the Workmen's Compensation Commission] in order to make the courts the tribunal of first instance and, if such an attempt is shown, the appeal should not be granted." *Oxford Cabinet Co. v. Parks,* 179 Md. 680, 683, 22 A. 2d 481 (1941).

See also *Benoni v. Bethlehem-Fairfield Shipyard, Inc.* 188 Md. 306, 52 A. 2d 613 (1947) ; *Hathcock v. Loftin,* 179

Md. 676, 22 A. 2d 479 (1941). Cf. *Bethlehem Steel Co. v. Mayo*, 168 Md. 410, 177 A. 910 (1935).

*Schneider's* Workmens' Compensation, Vol. 12, § 2458, states:

"On the expiration of the stated statutory period for requesting a review or for the taking of an appeal, absent fraud, mistake, or want of jurisdiction, an award, not void on its face, becomes final as to all matters of fact and law adjudicated. * * *"

\* \* \*

"* * * Whether one is injured in his employment becomes res adjudicata, if there is no appeal from the commission's award. The compensation examiner's order, or the finding and award of the hearing referee, or of the single commissioner, not appealed to the full commission, generally becomes the final award of the commission after the date allowed for appeal or review by the full commission if the parties have been notified of such award when made and the opportunity thus given to file a timely application for review by, or an appeal to the full commission. *Such final awards are not subject to collateral attack.* An award in a compensation proceeding is, for example, not open to collateral attack in a suit for declaratory relief against the third party tortfeasor and employee. * * *"

"The same is true of an unappealed final award of the Commission on a fact issue, within its jurisdiction, whether decided rightly or wrongly. The award is however conclusive under all the foregoing circumstances only when the commission is acting within its jurisdiction since a challenge to the jurisdiction may be made at any time." (Emphasis supplied).

No question of jurisdiction is present in the instant case.

Cogley's belated and futile effort to prove to the trial court that he was not the employer of the claimant and consequently not liable to the appellees, had the effect of seeking to upset, indirectly, the Commission's finding that Cogley was, along with the appellees, "jointly and severally" liable to Boothe. Such a defense should have been asserted before the Commission and on direct appeal to the trial court from the Commission's decision. Inasmuch as Cogley did not see fit to appeal the decision of the Workmen's Compensation Commission in the manner and time prescribed by Article 101, § 56, and Rules B1 through B12 of the Maryland Rules of Procedure, he has effectively closed the door to a review of the facts surrounding the compensation award.

In *Wors v. Tarlton,* 234 Mo. App. 1173, 95 S.W.2d 1199 (1936), the St. Louis Court of Appeals said:

"In this instance the record of the cause before the commission shows only that the claim was one by plaintiff, the employee, against the Illinois Terminal Company, his employer, for compensation for injuries received while 'working on a flat car leveling off dirt'; and in its final award the commission found that plaintiff was entitled to recover for his accident 'as provided in the Missouri Workmen's Compensation Law.' By virtue of such award the commission must be held to have resolved the question of its jurisdiction in its own favor [Morrison v. Term. R.R. Ass'n (Mo. App.) 57 S.W.(2d) 775, 776], and the face of the award, instead of disclosing a lack of jurisdiction so as to render the same void, purports instead to show proper jurisdiction in the commission in view of the recital that the award was rendered 'as provided in the Missouri Workmen's Compensation Law,' thus indicating that the commission must necessarily have found that the case was not one exclusively covered by any federal law, else it could and would not have as-

> sumed jurisdiction over it. *Moreover, no appeal was taken from the award, so that whether it was actually right or wrong upon the question of fact before the commission, it in any event became final and conclusive as to the matters adjudicated thereby, and is as impregnable to the present collateral attack* made upon it as though it had been rendered by a court rather than by a mere statutory board of arbitrators." (Emphasis supplied).

Cogley cites no authorities to support his position, and we have found none. Indeed, the authorities appear to be unanimous that the decision of the Commission when unappealed and unreviewed is final. 100 C.J.S. Workmen's Compensation, §§ 656a, 657a, and the cases therein cited.

Cogley argues that he has the right to prove that he would not be liable to pay compensation. It is undisputed that the right *did* exist. It was Cogley who extinguished his own right by not appealing the Commission's decision. We do not imply that Cogley would have prevailed in such an appeal, but simply point out that there was a right to appeal.

In *Core Contracting Co. v. Schaeffer*, 151 Md. 494 (1926), the Court of Appeals construed Article 101, § 62. The Annotated Code of 1924 provided substantially the same as it now does. The Court held:

> "Construing this section, it is apparent that, under its provisions, whenever an award of compensation is made against a principal contractor for injury received by an employee of a subcontractor, for which the subcontractor would be liable, the principal contractor is entitled to indemnity from the subcontractor."

"Indemnity" is defined in Black's Law Dictionary, 3rd Ed., page 949, as "A collateral contract or assurance, by which one person engages to secure another against an

anticipated loss or to prevent him from being damnified by the legal consequences of an act or forbearance on the part of one of the parties or of some third person * * *. The term is also used to denote a compensation given to make the person whole from a loss already sustained * * *."

Article 101, § 62 *supra,* provides in part:

"Where the principal contractor is liable to pay compensation under this section, *he shall be entitled to indemnity from any employer, who would have been liable to pay compensation* to the employee independently of this section, and shall have a cause of action therefor against such employer." (Emphasis supplied).

It appears that Article 101, § 62 creates a "surety" relationship amongst the parties. In such a relationship the principal contractor becomes the surety; the subcontractor becomes the principal, and the injured employee the obligee, so that in the event the surety (principal contractor) is required to pay to the obligee (injured employee), the surety (principal contractor) is entitled to indemnity from the principal (subcontractor).

In *Johnson v. Mortenson,* 110 Conn. 221, 147-A. 705 (1929), it was held that even absent a statutory provision providing for indemnity by a subcontractor to the principal contractor, the principal contractor may recover from the subcontractor any sums which the principal contractor was obligated to pay to the subcontractors' injured employee on behalf of the subcontractor. The recovery was allowed on the theory of implied indemnity.

All of the states except six [3] have statutory employer provisions whereby the general or principal contractor is liable for compensation to the employees of subcontractors, *Larson,* The Law of Workmen's Compensation, Vol. 2, § 72.31, and most states provide for indemnity to

---

3. The six exceptions are California, Delaware, Iowa, New Hampshire, Rhode Island and West Virginia.

the principal.[4] We think the legislative purpose in enacting Article 101, § 62, was to further the benevolent concept of Workmen's Compensation and to achieve that result by providing an incentive to the principal contractor to see that his subcontractors carry Workmen's Compensation insurance upon their employees. If the principal fails or neglects to ascertain that the subcontractors' employees are protected by Workmen's Compensation insurance coverage, it is the principal contractor who must bear the cost of injuries to the subcontractors' employees, subject only to the principal contractors' right to recover such costs from the subcontractor in an appropriate action. The burden of recovering from the non-insured subcontractor is shifted from the innocent employee to the principal contractor.

We think it patent that the appellees were compelled to pay compensation under the provisions of § 62 because of the failure of Cogley to provide Workmen's Compensation benefits for the claimant and pursuant to the same section of Article 101 the appellees are entitled to be indemnified by Cogley.[5]

*Judgment affirmed.*
*Appellant to pay the costs.*

---

4. *Larson,* The Law of Workmen's Compensation, Vol. 2, § 72.32.
5. In *Palumbo v. Nello L. Teer Co.,* 240 F. Supp. 226 (USDC Md.) 1965, Judge Winter, at page 232, said of Art. 101, § 62: "A principal contractor would hardly have been given an *unqualified* right of indemnity from any subcontractor where, as in the case at bar, the subcontractor—to be more precise the subsubcontractor — would not have been liable to the Workmen's Compensation claimant."