BROCKER MANUFACTURING AND SUPPLY COMPANY, INCORPORATED ET AL. *v.* WILLIAM MADDOX MASHBURN ET AL.

[No. 726, September Term, 1972.]

*Decided March 19, 1973.*

328

The cause was argued before GILBERT, MENCHINE and DAVIDSON, JJ.

*K. Donald Proctor*, with whom was *John S. Hebb, III*, on the brief, for appellants.

*Joseph S. Matricciani*, with whom was *Robert E. Mc-Manus* on the brief, for appellees.

GILBERT, J., delivered the opinion of the Court.

This appeal involves an interpretation of Md. Ann. Code Art. 101, § 58. It is concerned with the question of whether *vel non* an employee, after an award by the Workmen's Compensation Commission, may recover from a third party tortfeasor and continue to derive some benefits under the Workmen's Compensation Act.

The factual situation out of which this case arose is undisputed. On April 11, 1970, William Maddox Mashburn, then age 30, was seriously and permanently injured as the result of an automobile collision occurring on the northern approach to the Baltimore Harbor Tunnel. At that time, a vehicle operated by Mrs. Mary C. Vallone sustained a tire blowout, left the south bound lane in

which it had been operated, hurtled the concrete median wall that divided north and south bound traffic, and landed atop the vehicle being driven by Mashburn. That Mashburn was in the course of his employment, and that he is now in a state of akinetic mutism, is not challenged.[1]

A claim was filed with the Workmen's Compensation Commission and after a hearing the Commission passed an award in which it ordered the payment of temporary total disability to Mashburn. Subsequently, on September 16, 1970, the Commission found Mashburn to be totally permanently disabled and ordered the payment of compensation at the rate of $70.00 per week, not to exceed $30,000.00, to the claimant. The next day, the award was amended so that compensation was ordered to be paid at the rate of $85.00 per week, not to exceed $45,000.00. Md. Ann. Code Art. 101, § 36(1). In the meantime, the claimant's wife, Diane F. Mashburn, had apparently qualified as the guardian of her husband, Md. Ann. Code Art. 93A, § 201(b), and had instituted suit against Mrs. Vallone in the United States District Court for the District of Maryland. The litigation was settled by the payment of the sum of $100,000.00 to Mrs. Mashburn, as guardian of her husband. The Circuit Court of Baltimore City, having assumed jurisdiction over the guardianship, approved the settlement. Aetna Casualty and Surety Company (Aetna), Mashburn's employer's insurer, joined in the release to Mrs. Vallone. Mrs. Mashburn also settled her loss of consortium claim against Mrs. Vallone for $140,000.00.[2]

The draft in payment of Mashburn's third party claim was delivered to Aetna's counsel. From the draft, Aetna

---

1. The issues of accidental injury and disability arising out of the course of employment were resolved adversely to the employer and insurer by the Commission on July 21, 1970. No appeal was taken therefrom.

2. We were advised at oral argument that the Circuit Court of Baltimore City had been apprised of the amount of Mrs. Mashburn's settlement at the time it approved the settlement of the claim institued for Mashburn by his guardian.

deducted $29,466.49, as reimbursement for monies it had expended on behalf of Mashburn. Md. Ann. Code Art. 101, § 58. The deduction represented the following sums previously paid by the insurer:

| | |
|---|---|
| Temporary total disability | $ 2,051.49 |
| Permanent total disability | 9,000.00 [3] |
| Medical bills | 15,470.00 |
| Hospital bill 9/15/70 to 10/19/70 | 2,945.00 |

The balance of $70,533.51 was delivered to appellee's then counsel. An attorney's fee of $33,333.33 was deducted, so that the claimant actually received the net sum of $37,200.18.

Aetna, on October 29, 1970, notified the City Hospitals, where the claimant was a patient, that it was no longer responsible for the payment of medical bills that the claimant might incur from October 16, 1970 forward.[4]

Mashburn's then counsel, upon learning of Aetna's position, sought and obtained a hearing before the Commission on the following issue: "Payment of Medical Expenses in accordance with Art. 101, § 37." The hearing was held on December 22, 1970, and on February 4, 1971, the Commission concluded that the "employer and insurer are not liable for payment of medical expenses as a result of the claimant's accidental injury on April 11, 1970." The claimant, through his guardian, promptly filed a "Petition For Appeal" to the Circuit Court for Baltimore County. Appellants filed a demurrer to the petition. Before there was a ruling on the demurrer, the appellees submitted a "Suggestion For Removal" and the matter was transferred to the Circuit Court for Anne Arundel County, where the demurrer was overruled. The appellants then filed an answer to the petition. The case

3. The $9,000.00 was counsel fee awarded by the Commission to claimant's counsel for services rendered in connection with the compensation claim and charged against the total permanent award payable to the claimant.

4. Payment was actually made through October 19, 1970, so that there is a discrepancy of three days. The discrepancy was not explained in the briefs, in oral argument here, or in the trial court. We do not consider it.

was decided on its merits by a judge on the basis of a written stipulation of facts, argument of counsel and memoranda of law. The trial court vacated the Workmen's Compensation Commission's order of February 4, 1971, and remanded the case to the Commission "for entry of an award consistent with the findings in the Memorandum Opinion" dated November 3, 1972. The court declined to hear testimony "regarding the circumstances surrounding the . . . settlement" of Mrs. Mashburn's claim and denied a request for further hearing. The trial judge rejected the employer's and insurer's contention that the settlement of the third party claim acted to relieve them of the obligation to pay medical expenses, and held that the employer and insurer were "liable for . . . medical expenses from and after October 19, 1970."

Here, the appellants argue that the order of the Circuit Court for Anne Arundel County should be reversed because:

1. "Settlement Of Third Party Claim Instituted By An Employee Constitutes A Bar To Any Subsequent Workmen's Compensation Claim For Payment Of Medical Expenses."

2. "The Employer And Insurer Are Entitled To a Credit Of The Net Amount Received By The Claimant In His Third Party Action Against Subsequent Awards By The Workmen's Compensation Commission."

3. That the employer and insurer are entitled to a credit "for some portion" of the wife's settlement, and they should be allowed to present testimony in order to determine what "portion" they are entitled to receive.

It is patent that arguments 1 and 2 are in the alternative.

# I

The Workmen's Compensation Act was first adopted in Maryland in 1914, Ch. 800, Md. Laws. Section 57 thereof

conferred upon an injured employee an election of remedies whereby he could proceed under the Compensation Act or against the third party, but not both. *Hagerstown v. Schreiner,* 135 Md. 650, 109 A. 464 (1920). If a claim was made under the Act, then the employer was given the right to proceed against the third party for his own benefit and that of his insurer, provided that any excess over and above their actual expenses was to be paid to the injured employee. *Baltimore Transit Co. v. State,* 183 Md. 674, 39 A. 2d 858 (1944). By the Acts of 1920 and 1922, the employee was granted the right to sue the third party if the employer had not done so within two months following an award of compensation to the injured employee or his dependents. The employee, or his dependents, if successful, were required to reimburse the employer or his insurer out of the proceeds that were recovered. *Clough & Molloy, Inc. v. Shilling,* 149 Md. 189, 131 A. 343 (1925). In 1957, "The Commission to Study Maryland's Workmen's Compensation Laws and the Operation of the State Industrial Accident Commission" submitted a report to then Governor McKeldin in which they said:

> "The Study Commission believes that the fact that disability or death resulted under circumstances giving rise to *an action against a third party tortfeasor, should not operate, under any circumstances, to decrease the benefits properly allowable under Article 101.* To this end we recommend the repeal of Section 59 [now Section 58] and its reenactment with amendments . . . ." [5] (Emphasis supplied).

The amendment proposed by the Study Commission was adopted, Ch. 814 [1957] Md. Laws. Section 58 [then § 59] reads in pertinent part as follows:

---

5. Second Report of The Commission to Study Maryland's Workmen's Compensation Laws and the Operation of The State Industrial Accident Commission, p. 24.

334

"Where injury . . . for which compensation is payable under this article was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee . . . may proceed either by law against that other person to recover damages or against the employer for compensation under this article, or in case of joint tortfeasors against both; and if compensation is claimed and awarded or paid under this article, any employer, if he is self-insured, [or] insurance company . . . may enforce for their benefit . . . the liability of such other person; provided, however, if damages are recovered in excess of the compensation already paid or awarded to be paid under this article, and also any payments made for medical or surgical services, funeral expenses or for any of the other purposes enumerated in § 36 of this article, then any such excess shall be paid to the injured employee . . . less the expenses and costs of action incurred by the employer [or] insurance company. . . . If any such employer [or] insurance company . . . shall not, within two months from the passage of the award . . ., start proceedings to enforce the liability of such other person, the injured employee . . . may enforce the liability of such other person, provided, however, that if damages are recovered the injured employee . . . may first retain therefrom the expenses and costs of action incurred by the said employee . . ., and the employer [or] insurance company . . . shall be reimbursed for the compensation already paid or awarded and any amount or amounts paid for medical or surgical services . . . or for any of the other purposes enumerated in § 36 of this article, except court costs and counsel or attorney's fees, which shall be paid by the injured employee . . . and the

employer [or] insurance company . . . in the proportion that the amount received by each shall bear to the whole . . . and the balance in excess of these items shall inure to the injured employee . . ., and the amount thus received by the injured employee . . . shall be in lieu of any award that might otherwise have been made thereafter in the same case under the provisions of this article and said case shall thereupon be deemed to have been finally settled and closed *unless the amount thus received by the injured employee . . . from such other person shall be less than the injured employee . . . would be otherwise entitled to receive under the provisions of this article, in which event he . . . shall have the right to reopen the claim for compensation under this article to recover the difference between the amount thus received by the injured employee . . . and the full amount of compensation which would be otherwise payable under this article.*" (Emphasis supplied).

Appellants read § 58 to preclude any recovery by the injured employee after settlement of his third party action. They point to the words "shall be in lieu of any award that might otherwise have been made thereafter in the same case under the provisions of this article and said case shall thereupon be deemed to have been finally settled and closed." They acknowledge that the validity of the employee's claim for medical expenses is controlled by the 1957 amendment which added the words to § 58 (then § 59) "unless the amount thus received by the injured employee . . . from such other person shall be less than the injured employee . . . would be otherwise entitled to receive under the provisions of this article. . . ."

Appellants, nevertheless, urge upon us that § 58 contemplates not medical benefits but "compensation" payments measured by § 36. They contend that, "It is not

unreasonable to conclude that the Legislature in 1957, in departing from the principle of election previously incorporated in Article 101 did so only to a limited extent, and that the Legislature in doing so used the schedules of Section 36 as a measure of the degree of such departure." They further aver that it is "not unreasonable to conclude that the Legislature conceived that an employee in the settlement of a third party suit would certainly recover at least his medical expenses, past, present and future." We think appellants misread § 58 and misinterpret the legislative intent. The report of the Study Commission above quoted, from which the General Assembly adopted *in toto* the 1957 amendment to § 58, makes it vividly clear that the purpose behind the amendment was to prevent an injured employee, who obtains recovery from a negligent third party, from receiving less in *benefits* under the Act than he would have been entitled to receive absent a third party claim.

This Court, in *Uninsured Employers' Fund v. Booker,* 13 Md. App. 591, 284 A. 2d 454 (1971), stated that the word "compensation" as used in Art. 101 was sometimes employed to convey a "broad meaning," including medical benefits, and at other times used in a "limited sense, referring to the payments called for by the schedules in § 36." We said, "Which meaning is intended by a particular use of the word must be determined in each case by the context in which it is used."

In *Subsequent Injury Fund v. Chapman,* 11 Md. App. 369, 274 A. 2d 870 (1971), *aff'd mem.,* 262 Md. 367, 277 A. 2d 444 (1971), it is stated:

> ". . . [W]here there is ambiguity in the compensation law the uncertainty should be resolved in favor of the claimant."

*See also Uninsured Employers' Fund v. Booker, supra; Board of County Commissioners v. Fleming,* 13 Md. App. 261, 282 A. 2d 512 (1971).

The late Mr. Justice Holmes, sitting as a Circuit Judge, spelled out in *Johnson v. United States,* 163 Fed. 30, 32 (1908), the test for applying legislative intent. He said:

> *"The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed.* The major premise of the conclusion expressed in a statute, the change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for the courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before." (Emphasis supplied).

*See Board of County Commissioners v. Fleming, supra.*

We think it clear that the intent of the 1957 amendment was, in essence, that an injured employee may, by the combined result of his compensation claim and a proceeding against a negligent third party, recover more than he could recover under the Act, but he can never recover less. If he were to receive less from the third party than he is entitled to receive under the Act, he may then "reopen the claim . . . to recover the difference between the amount . . . received [from the third party] . . . and the full amount of compensation which would be . . . payable" under Art. 101. A reading of the Study Commission's Report, together with the 1957 enactment can, in our opinion, lead to no other reasonable interpretation.

The construction placed upon § 58 by appellants would deprive the appellee of benefits under the Act by limiting recovery to the amount obtained from the negligent third party (less any sum he is called upon to reimburse the employer-insurer), and would almost certainly discourage third party actions by other claimants where there is a possibility, such as here, of large future medical payments and thereby defeat the will of the General Assembly.

We hold that the trial judge was correct in reversing the Commission's order of February 4, 1971, denying the "payment of medical expenses" to the appellee, but we think the trial court's order to be too broad.

## II

The effect of the trial judge's order, appellants contend, and we agree, is to allow the claimant both to have his cake and eat it. He would be entitled, by virtue of the ruling of the Circuit Court for Anne Arundel County, to retain the $37,200.18 and at the same time continue to receive payments under the Act.

In *Gray v. State Roads Commission*, 253 Md. 421, 252 A. 2d 810 (1969), the Court of Appeals cited with approval *Larson, Workmen's Compensation Commission*, Vol. 2, § 71.20, wherein Professor Larson said:

> "It is equally elementary that the claimant should not be allowed to keep the entire amount both of his award and his common-law damage recovery. *The obvious disposition of the matter is to give the employer so much of the negligence recovery as is necessary to reimburse him for his compensation outlay, and give the employee the excess.* This is fair to everyone concerned: the employer, who, in a fault sense, is neutral, comes out even. . . ." (Emphasis supplied).

When Md. Ann. Code Art. 101, §§ 37 and 58 are read together, the legislative mandate is pellucid. The employer and insurer, under § 37, are responsible for the medical expenses incurred by the employee as a result of an accidental injury arising out of and during the course of his employment. No limitation is placed upon the dollar amount of the benefits conferred by that section. Under the provisions of § 58, an injured employee may assert a third party tortfeasor claim and may keep any excess over and above the amount necessary to reim-

burse the employer and insurer for the sums they have been called upon to pay to or on behalf of the injured employee under the provisions of the Act. The reimbursement requirement of § 58 precludes "double recovery" by the injured employee, and the 1957 amendment prevents his receiving less in benefits from a third party recovery than he would have received under Art. 101.

The litigants have referred us to cases in other jurisdictions [6] which support the position herein taken. We, however, need not rely upon them because as we read our statute it is susceptible of but one rational interpretation.

The rule is that when a recovery is made by an injured employee from a negligent third party pursuant to § 58, the proceeds are to be distributed as of the time of settlement [or payment of judgment], and future payments by the employer and insurer are suspended until such time, if it occurs, that the net amount received by the injured employee from the negligent third party is exceeded by the benefits to which the injured employee would have been entitled in the absence of third party liability. At that point in time, the employer and its insurer shall recommence the payment of all benefits provided for in Art. 101.

Applying the rule to the instant case, the appellants shall, when the compensation benefits (including the weekly award and the medical payments required by § 37) for which they would have become liable subsequent to October 19, 1970 exceed $37,200.18, the employer and insurer shall forthwith recommence payment of compensation benefits to or for the claimant.

---

**6.** *Richardson v. United States Fidelity and Guaranty Co.*, 102 So. 2d 368 (Miss. 1958); *DiMaggio v. International Chimney Corp.*, 136 N.Y.S.2d 311 (1954); *Simonetti v. Munro Waterproofing Co.*, 124 N.Y.S.2d 789 (1953).

## III

Appellants' third argument is totally devoid of merit. They assert that they should be entitled in some manner to participate in the proceeds that Mrs. Mashburn recovered in her derivative suit against Mrs. Vallone. It is obvious that, under the circumstances of this case, Mrs. Mashburn was not entitled to proceed against her husband's employer under the Workmen's Compensation Act for recovery for loss of consortium.

Although the Workmen's Compensation Act provides a right of subrogation to an employer and insurer, § 58, *Cogley v. Schnaper and Koren Construction Co.*, 14 Md. App. 322, 286 A. 2d 819 (1972), there must be some act performed or committed by, for, or against the subrogee that gives rise to the right to subrogate. In the instant case the appellants did not, nor were they legally obligated to, pay any sum to Mrs. Mashburn. We perceive no act performed or committed by Mrs. Mashburn that would justify the appellants' being subrogated to any of her claim against Mrs. Vallone. It is difficult to follow the appellants' reasoning that they should be allowed to present testimony in order to show in some vague way that they are entitled to participate in the proceeds recovered by Mrs. Mashburn. Appellants attempt to imply that the amount paid to Mashburn was insufficient and disproportionate to his injuries and that the amount received by Mrs. Mashburn was in excess of a reasonable sum for loss of consortium. Appellants, we observe, joined in the release of Mashburn's claim against the third party tortfeasor and knew, or should have known, that Mrs. Mashburn did not execute that release individually, but only in her capacity as guardian of her husband. The Circuit Court of Baltimore City approved the settlement. After the amount of the wife's individual recovery had been called to the attention of the Chancellor, he investigated and again approved the guardian's settlement *nunc pro tunc*. We know of no theory of law, nor have we been referred to any by appellants, that

would justify this Court's authorizing appellants to conduct a "fishing expedition" into the circumstances surrounding Mrs. Mashburn's individual settlement.

We hold that the trial judge properly refused to consider appellants' assertion of a right to share in the monies recovered by Mrs. Mashburn in her derivative action.

> *Order affirmed in part; reversed in part; and remanded to the Circuit Court for Anne Arundel County for the passage of an order not inconsistent with this opinion.*
> *Costs to be paid by appellants.*
> *Mandate to issue forthwith.*