785 A.2d 859

**CHESAPEAKE HAVEN LAND CORPORATION, et al.,**

**v.**

**Monteith Gilpin LITZENBERG.**

No. 2372, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Nov. 30, 2001.

William S. Tostanoski (Jennifer L. Barrows and Tostanoski & Martin, P.A., on the brief), Baltimore, for appellants.

James Lee Katz, Owings Mills, for appellee.

Argued before HOLLANDER, KRAUSER, and JAMES S. GETTY (Ret'd, Specially Assigned), JJ.

JAMES S. GETTY, Judge, Retired, Specially Assigned.

The single issue raised by this appeal is whether the Circuit Court for Cecil County calculated correctly the amount of credit against future worker's compensation benefits an employer/insurer was entitled to claim from an award obtained by a claimant in a third-party proceeding. The appellant (employer and insurer) submits that the entire net award of $212,687.30 is the correct amount of the credit; the appellee (claimant) insists that $60,285.22 is the right figure.

### Undisputed Facts

On April 22, 1993, Monteith Gilpin Litzenberg, appellee herein, was injured in a motor vehicle accident when a tarpaulin blew off a truck in front of him and covered the windshield of a vehicle approaching appellee. The driver of the third vehicle lost control and a head-on collision occurred between the third vehicle and appellee.

Appellee was driving a vehicle owned by his employer, Chesapeake Haven Land Corporation. He filed a claim for worker's compensation benefits dated July 1, 1993, indicating that he had been unable to return to work due to injuries to his back, legs, and knees. His employer's compensation insurer, Pennsylvania National Insurance Company, provided appellee with medical, vocational rehabilitation, and temporary total disability benefits.

In addition to his compensation claim, appellee filed a tort action against David A. Bramble, Inc., and Cramaro Tarpaulin Systems, Inc., the third-party defendants. In January 1996, a jury in the Circuit Court for Cecil County returned a verdict for appellee in the amount of $349,400. The damages were itemized as follows:

Past medical and rehabilitation
    expenses .......................................$ 28,900
Future medical and expenses........................$ 13,500
Past lost earnings.................................$ 34,000
Future loss of earnings ...........................$213,000
Non-economic damages..............................$ 60,000 [1]

Appellee suffered a permanent back injury that precluded his return to Chesapeake Haven and some unrelated work he performed in restoring houses. He received vocational rehabilitation training resulting in a job where he earned the same income he had received at Chesapeake Haven.

The third-party defendants appealed the jury verdict. In *Anderson, et al. v. Litzenberg,* 115 Md.App. 549, 694 A.2d 150 (1997), this Court (Harrell, J.) affirmed the judgment. The issues on appeal in that case related to instruction on spoliation of evidence (the tarpaulin had been destroyed), admission of evidence relating to costs of a replacement worker, and alleged error in denying a new trial on the issue of the loss of future earning capacity. The issues were decided adversely to

---

1. Md.Code (1998 Repl.Vol.), Courts & Judicial Proceedings Article, sec. 11–109(b), requires the trier of fact to itemize personal injury awards since 1986, which preceded the re-codification of the Workers' Compensation Act in 1988. With accrued interest, the third-party claim resulted in a payment to appellee of $398,549.82.

appellants for failure to raise the same at trial, or failure to support with authority their position. The Court did acknowledge that "appellee concedes that his future economic loss claim is based solely on the earnings he would have derived from his unrelated real estate renovation business."

■ In addition to his employment with Chesapeake Haven, appellee operated his own part-time real estate business, which consisted of buying "run down" houses, restoring, and renting these properties by his own labor. It is the secondary employment award that adds to the misunderstanding between the parties herein. The issue before us in this appeal is whether the compensation insurer's subrogation interest in appellee's third-party recovery extends to the $213,000 future economic loss award for damage to appellee's continuation of his real estate business, which is separate from his employment with Chesapeake Haven.

Appellee contends that appellant has no subrogation rights against the $213,000 paid by the third parties, because those damages are not part of the compensation insurer's past or future liability to the injured worker. Appellant claims that the Commission had no authority to reduce appellant's credit against future benefits under section 9–902 of the Labor and Employment Article of the Md.Code (1999 Repl.Vol.) ("LE"), and, therefore, the entire $213,000 should be credited to appellant against future claims for compensation filed by appellee.

### Analysis

Sec. 9–902(a) authorizes an *insurer*, when compensation is awarded or paid, to bring an action for damages against a third party who is liable for the injury or death of a covered employee. Sec. 9–902(b) provides that, if the *insurer* recovers damages exceeding the amount of compensation awarded and the amount of payments made for medical or funeral services, the *insurer* shall

(1) deduct from the excess amount its costs and expenses for the action; and (2) pay the balance of the excess amount

to the covered employee, or to the dependents of the employee in case of death.

Under Sec. 9–902(c), if the *insurer*[2] does not bring an action against a third party within two months after the Commission makes an award, the covered *employee* may bring the action for damages against the third party. When the covered *employee* recovers damages, the distribution under Sec. 9–902(e) shall be as follows:

(1) deduct the expenses for the action; (2) reimburse the insurer for the compensation already awarded, including amounts paid for medical services; and (3) keep the balance of the damages recovered.

Sec. 9–903 provides that if a covered employee receives damages less than the amount he or his dependents would be entitled to receive under this title, the employee or dependents may reopen this compensation claim to recover the difference between the amount of damages received and the full amount of compensation payable.

Appellee complied with sec. 9–902(e)(2), requiring that the employer-insurer be reimbursed for compensation already paid and amounts paid for medical services. Appellant's total expenditures amounted to $64,812, which was reduced by appellant's pro rata share of attorney's fees and costs of $23,538.95. The balance, $41,273.05, was distributed to appellant.

The appellate courts of Maryland have recognized consistently that the allowance to a compensation insurer of an interest in a third-party recovery obtained by a claimant is a right of subrogation. *Brocker Manufacturing & Supply Company, Inc. v. Mashburn,* 17 Md.App. 327, 301 A.2d 501 (1973); *Cogley v. Schnaper & Koren Construction Company,* 14 Md. App. 322, 286 A.2d 819 (1972); *Baltimore Transit Co. v. State to Use of Schriefer,* 183 Md. 674, 39 A.2d 858 (1944); *see also Anne Arundel County v. McCormick,* 323 Md. 688, 594 A.2d

---

**2.** The rights of an insurer also extend to a self-insured employer, the Subsequent Injury Fund and the Uninsured Employers' Fund.

1138 (1991); *Smith v. Bethlehem Steel Corp.,* 303 Md. 213, 492 A.2d 1286 (1985). LE sections 9–902 and 903 are the statutory codification of the compensation insurer's rights of subrogation, *Johnson v. Miles,* 188 Md. 455, 53 A.2d 30 (1947), and provide for the distribution of third-party claim recoveries after payment of compensation benefits, and for the compensation insurer's responsibility to make future payments thereafter.

Both appellant and appellee cite *Brocker v. Mashburn, supra,* as the "only case on point," although they interpret it differently. That case, authored by Judge Richard P. Gilbert, involved payment of compensation benefits based on permanent injuries, a third-party suit filed by the wife as guardian of the claimant, and a separate count by the wife for loss of consortium.

The litigation was settled by payment of $100,000 to the wife as guardian of her husband, and $140,000 to the wife for her loss of consortium claim. After deduction of sums previously paid by the employer and attorney fees, the claimant received $37,200. The trial court ruling would have allowed the claimant to retain the $37,200 and continue to receive compensation benefits. This Court interpreted the legislative mandate of Art. 101, secs. 37 and 58 (now Md.Code Ann. LE § 9–901 to § 9–903) to preclude "double recovery" by the injured employee, and to prevent his receiving less in benefits from a third party than he would have received under Art. 101. Thus, the Court held, when third-party proceeds are distributed, future payments by the insurer are suspended until such time, if it occurs, that the net amount received by the injured party is exceeded by the benefits that would have been payable in the absence of third-party liability. As applied to the *Brocker* case, benefits would resume when the total benefits payable exceeded $37,200. Stated differently, the insurer's subrogation rights are extended as a "credit" against its obligation to pay future benefits.[3]

---

3. The insurer's "lien" is extinguished when it is reimbursed by the claimant upon receipt of the third-party recovery. The "credit" extends

A secondary relevant issue in *Brocker* was the insurer's attempt to establish a subrogation interest in the wife's derivative claim for loss of consortium. In rejecting the insurer's claim, this Court stated:

Although the Workmen's Compensation Act provides a right of subrogation to an employer and insurer § 58, *Cogley v. Schnaper and Koren Construction Co.*, 14 Md. App. 322, 286 A.2d 819 (1972), there must be some act performed or committed by, for, or against the subrogee that gives rise to the right to subrogate. In the instant case the appellants did not, nor were they legally obligated to, pay any sum to Mrs. Mashburn. We perceive no act performed or committed by Mrs. Mashburn that would justify the appellants' being subrogated to any of her claim against Mrs. Vallone.

17 Md.App. at 340, 301 A.2d 501.

Appellant argues that nothing in *Brocker* or the statute authorizes the Workers' Compensation Commission to reduce appellant's credit against future benefits pursuant to LE § 9–902 and the credit should remain at the full amount of the net recovery, $212,687.30. Appellant agrees that the insurer had no right of subrogation to any portion of the loss of consortium claim in *Brocker*. That result, according to appellant, has no relevance to the present case where "a significant portion of appellee's recovery in the third-party case arose from his claim for future economic loss."

Appellee suggests that the denial of subrogation rights to the recovery by the wife for loss of consortium is "legally analogous" to the present case. Specifically, appellee points out that the compensation benefits he has received do not compensate him for economic loss suffered to his own private business. The essential and controlling fact here, according to appellee, is that the $212,687.30 future economic loss award was for damages to his self-employment business, unrelated to

the concept to future benefits for which the insurer may be otherwise liable.

his Chesapeake Haven employment, and not compensated for by any past or future workers' compensation award. Therefore, appellee asserts, the award was for separate damages incurred by appellee for which he has no remedy against any compensation carrier, and appellant is not entitled to a "windfall" in the form of a credit against future compensation benefits that it has no obligation to provide.

### The Commission Ruling

Our review of the record herein establishes the following: Appellee's claim for benefits, dated August 31, 1999, raised two issues, namely:

Nature and extent of permanent disability to the following parts of the body: <u>Back</u>

Calculation of compensation insurer's third party credit.

When the case was heard by the Commission on April 7, 2000, however, the Commission refused to consider the issues of nature and extent or credit due the insurer until the parties submitted a statement outlining their position on the issues raised. Thereafter, the Commission held that the insurer was entitled to a credit from the third-party proceeds "in the amount of $41,273.05 in satisfaction of its lien, and employer and insurer's credit against future benefits per LE 9–903 is $60,285.22." The claim was subject to further consideration as to permanent partial disability, if any, upon request of the parties.

### Conclusion

The Commission provided no rationale for establishing appellant's credit against future compensation payments as being $60,285.22. We conclude that the Commission adopted the following compensation suggested by appellee:

The jury award of $213,000 for future lost earnings was 60% of the total jury verdict, in the amount of $349,400. Thus, the appellant's interest extends to only 40% of the overall recovery. The overall recovery, including interest, totaled $398,549.82. Forty percent of the recovery amounts to

$159,419.93. From that figure is deducted the reduced costs and attorney fees involved in the recovery of the award, amounting to $52,460.98 counsel fees, $5,374.81 costs, and $41,298.92 appellant's lien. The total expenses are $99,134.71. Subtracted from the total, $159,419.93, appellee's recovery is $60,285.22, which is the full credit due appellant.

In our view, the legislative intent in the adoption of LE §§ 9–901 through 903 is best expressed by Professor Larsen in Vol. 2, sec. 71.20, *Worker's Compensation Commission,* stating:

> It is equally elementary that the claimant should not be allowed to keep the entire amount both of his award and his common law damage recovery. The obvious disposition of the matter is to give the employer so much of the negligence recovery as necessary to reimburse him for his compensation outlay, and give the employee the excess. This is fair to everyone concerned: the employer, who, in a fault sense, is neutral, comes out even. . . .

When sections 9–902 and 9–903 of Md.Code LE Art. are read together, the legislative intent is clear. The employer and insurer are reimbursed fully for the benefits and medical services provided and the third-party claimant may keep the balance. The reimbursement requirement precludes "double dipping" by the claimant and preserves his right to reopen his case after the third-party recovery is depleted.

Although Professor Larsen was discussing the "lien" aspect of a third-party recovery, we conclude that the "credit" concept should be resolved in like fashion. Specifically, the employer/insurer credit should be calculated from that portion of the third-party recovery attributable to benefits paid or payable by the employer/insurer.

Benefits for either permanent disability (§ 9–602(a)) or temporary total disability (§ 9–621) include only those earnings in the job in which the injury occurred, except for several concurrent work situations not relevant here. *See Buckler v. Willett Construction Co.,* 345 Md. 350, 360, 692 A.2d 449 (1997); *Crowner v. Baltimore Butchers Ass'n,* 226 Md. 606,

611, 175 A.2d 7 (1961). When, as here, an injured worker's earnings in self-employment are excluded from the calculation of benefits to be paid by the compensation insurer, third-party recoveries for those losses cannot be considered as part of the insurer's subrogation interest. The insurer can never be required to pay any benefits to the claimant based on his recovery for damages to his secondary employment. Neither can the insurer receive a credit against future benefits based solely on the third-party recovery.

Permanent partial disability based upon the injured worker's Chesapeake Haven employment has yet to be decided in this case. The Commission, however, reduced the total recovery by 60% to reflect the $213,000 jury verdict. Thus, the remaining 40% ($159,419.93) was available for distribution. The attorney fees and costs, less 60%, were $57,834.79; the lien for benefits paid by the insurer was $41,298.92; the total expenses amount to $99,134.71.

$$\begin{array}{r} \$ \ \ 159,419.93 \\ - \ \$ \ \ \ \ 99,134.71 \\ \hline \$ \ \ \ \ 60,275.22 \end{array}$$

Thus, $60,275.22 was the distribution available to the claimant and that figure, not $213,000, represents the insurer's credit against future compensation benefits.

> A reviewing court " 'must review the agency's decision in the light most favorable to it; ... the agency's decision is prima facie correct and presumed valid, and ... it is the agency's province to resolve conflicting evidence' and to draw inferences from that evidence."

*Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 68, 729 A.2d 376 (1999) (quoting *CBS v. Comptroller,* 319 Md. 687, 575 A.2d 324 (1990) (quoting *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 490 A.2d 1296 (1985))). We conclude that the Commission correctly resolved the credit issue and the circuit court properly affirmed that decision.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**