*Baltimore County, Maryland v. Charles Ulrich*, No. 2541, Sept. Term 2018.  Opinion by Arthur, J.

**WORKERS' COMPENSATION ACT—STATUTORY LIEN ON EMPLOYEE'S RECOVERY FROM THIRD-PARTY HEALTHCARE PROVIDER**

If a person other than an employer is liable for a work-related injury, the employee may bring a claim under the Workers' Compensation Act against the employer or may bring an action for damages against the third-party tortfeasor.  Md. Code (1991, 2016 Repl. Vol.), § 9-901 of the Labor and Employment Article.  When an employee pursues a claim for workers' compensation benefits and also sues the third party for damages, the employer retains a subrogation interest in the reimbursement of benefits that it paid under the Act, including medical expenses.  This subrogation interest acts as a statutory lien on the employee's recovery of damages from a third-party tortfeasor.  *See id.* § 9-902(e).

This statutory lien arises only when the employee recovers damages from a third party who is liable for the compensable injury.  A third-party healthcare provider that merely treats an employee's work-related injury is not liable for that injury, but only for the additional harm resulting from negligent treatment.  Accordingly, where an employer has paid for medical services exclusively to treat the compensable injury (not to treat the additional harm from medical negligence), the employer has no subrogation interest in the reimbursement of those medical expenses out of the damages recovered by an employee for the alleged negligent treatment.

In this case, the injured employee recovered a monetary settlement in a malpractice action against the third-party healthcare providers that treated his work-related injury. The employee did not recover any sums for medical expenses in the malpractice action. The employer was not entitled to be reimbursed for medical expenses that resulted solely from the work-related injury—expenses that the employer alone was obligated to pay and that the employee had no legal right to recover from the third-party healthcare providers.

Circuit Court for Baltimore County
Case No. 03-C-17-001691

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2541

September Term, 2018

_____

BALTIMORE COUNTY, MARYLAND

v.

CHARLES ULRICH

_____

Nazarian,
Arthur,
Bair, Gary E.
  (Specially Assigned),

JJ.*

_____

Opinion by Arthur, J.

_____

Filed:  January 30, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

*Chief Judge Matthew J. Fader and Judge Christopher B. Kehoe did not participate in the Court's decision to designate this opinion for publication pursuant to Maryland Rule 8-605.1.

Baltimore County, as a self-insured employer, paid for medical services to treat an employee's work-related injury. The employee later recovered a monetary settlement in a tort action for medical malpractice in the treatment of that injury. The County demanded reimbursement, out of the settlement proceeds, for all medical expenses that it had paid.

Both the Workers' Compensation Commission and the Circuit Court for Baltimore County determined that the County was not entitled to reimbursement for those medical expenses. The rationale for both decisions was that the medical expenses resulted solely from the work-related injury; the medical expenses would have been incurred even if no malpractice had occurred; and, thus, the malpractice defendants had no liability to pay those medical expenses.

In this appeal, Baltimore County contends that the Commission and the circuit court misconstrued the reimbursement requirement codified at Md. Code (1991, 2016 Repl. Vol.), § 9-902(e) of the Labor and Employment Article ("LE"). Because the County has failed to establish any error, we affirm the judgment upholding the Commission's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     Injury Arising out of Mr. Ulrich's Employment with Baltimore County

On June 20, 2011, Charles Ulrich suffered an accidental injury arising out of his employment as a maintenance specialist for the Baltimore County Department of Recreation and Parks. Mr. Ulrich had been lifting a heavy trash receptacle when he suddenly felt a painful "snap" near his left elbow.

Later that day, Mr. Ulrich sought treatment at a facility operated by Concentra Health Services. A family practitioner diagnosed him with a strain of the left biceps and forearm. He soon returned to work with restrictions on the maximum weight that he could lift or carry, but he continued to experience pain and weakness in his left arm.

Five weeks after the injury, a hand specialist examined Mr. Ulrich and determined that he had suffered a complete tear of the left distal biceps tendon. Mr. Ulrich stopped working and promptly underwent surgery to repair the tendon.

Mr. Ulrich filed a claim with the Workers' Compensation Commission regarding his work-related injury. Baltimore County, a self-insured employer, paid for the surgery and related medical services. The County also paid temporary total disability benefits for an approximately four-month period in which Mr. Ulrich was completely unable to work.

Upon his return to work, Mr. Ulrich found himself unable to meet his job responsibilities, even after limiting his duties to try to avoid any heavy lifting. He retired in early 2013 and received disability retirement benefits through the Employees' Retirement System of Baltimore County. The Workers' Compensation Commission later determined that, under LE § 9-610, these benefits satisfied the County's obligation to pay additional disability compensation under the Workers' Compensation Act.

### B. Mr. Ulrich's Medical Malpractice Action

In 2014, Mr. Ulrich filed a malpractice claim against Concentra. He alleged that he "experienced permanent and disabling injuries, a severe shock to his nerves and nervous system, pain, mental anguish, [and] unnecessary procedures, ha[d] been and w[ould] continue to be obligated to receive hospital and medical care, ha[d] been and

2

w[ould] continue to be prevented from engaging in his usual activities, duties and pursuits, ha[d] incurred and w[ould] continue to incur medical expenses in the future, and ha[d] otherwise been hurt, injured and damaged." His certifying expert opined that Concentra's employees had breached the standard of care when they failed to diagnose the ruptured tendon at the time of the initial injury. According to the expert, Mr. Ulrich suffered permanent damage to the strength and functioning of his left arm because of the misdiagnosis.

Concentra removed the action to the United States District Court for the District of Maryland, based on diversity of citizenship.

Through interrogatories, Concentra asked Mr. Ulrich to "[s]tate in detail all of the injuries and damages, including but not limited to physical, mental, emotional, or financial [injuries and damages]" caused by the alleged negligence. In response, he asserted that the permanent weakness in his left arm, in combination with other ailments, left him unable to perform manual labor. He explained that he had retained an expert to calculate the loss of income resulting from his disability. He stated that his "future medical needs [were] still being evaluated" at that time.

### C.    Settlement of the Medical Malpractice Action

The federal district court referred Mr. Ulrich's malpractice case for a mediation session before a magistrate judge. In advance of the mediation, Mr. Ulrich's attorney summarized the nature of his claims in a letter to the court and a settlement demand letter to opposing counsel.

In both letters, Mr. Ulrich's attorney wrote that "the standard of care requires that

a distal biceps tendon rupture be surgically repaired as soon as possible and no later than 4 weeks following injury because the tendon becomes entrapped in scar tissue after that time[.]" According to his attorney, a "prompt surgical repair . . . typically returns a patient to full strength and motion[,]" but a "[d]elayed repair or no repair typically results in decreased strength and endurance." His attorney represented that an expert economist had assessed Mr. Ulrich's "economic loss" and that Mr. Ulrich would seek non-economic damages because he "suffers daily from his weakened left arm." His attorney specified: "No medical bills are being claimed, since Plaintiff's claim in this case was that Mr. Ulrich needed surgery sooner – not that he didn't need surgery."

Before the mediation, a Baltimore County claims adjuster sent Mr. Ulrich a "lien statement" documenting that, in addition to temporary total disability benefits, the County had paid $17,152.42 for medical services to treat his arm injury. Mr. Ulrich's attorney notified the claims adjuster that her client was not seeking to recover medical expenses in the malpractice action and that he did not intend to reimburse the County for those expenses out of the proceeds of the malpractice action.

As a result of the mediation, Mr. Ulrich and Concentra reached a confidential agreement to settle the malpractice claim. After deducting attorneys' fees and other costs of the action, the net proceeds exceeded the total amount of temporary total disability benefits and medical expenses paid by the County.

In a letter informing the claims adjuster of the settlement, Mr. Ulrich's attorney wrote: "As I had told you prior to mediation, no medical bills were claimed in the underlying tort case because Mr. Ulrich would have needed the surgery regardless of the

4

malpractice of Concentra." To satisfy Mr. Ulrich's statutory obligation to reimburse his employer for the "compensation already paid or awarded" (*see* LE § 9-902(e)), the attorney sent the County a check equal to the amount of temporary total disability benefits previously paid, minus the County's proportionate share of attorneys' fees and expenses incurred in the malpractice action. The County declined to accept that amount and demanded that Mr. Ulrich also reimburse the County for medical expenses in the amount of $17,152.42, minus a proportionate share of fees and expenses.

### D.      **Decision of the Workers' Compensation Commission**

On January 27, 2017, the Workers' Compensation Commission held a hearing on several issues in Mr. Ulrich's case, including his obligation to reimburse the County out of the proceeds of the malpractice settlement. Mr. Ulrich had agreed to reimburse the County for the temporary total disability benefits already paid, after a reduction for the County's proportionate share of fees and expenses. The County contended, however, that it was also entitled to pro rata reimbursement for all amounts it had paid for medical services.

At the hearing, Mr. Ulrich's malpractice attorney acknowledged that the complaint included allegations that Mr. Ulrich had incurred and would continue to incur medical expenses. She characterized those allegations as "boilerplate" language that she would include "at the beginning" of any malpractice case. The attorney explained that she did not ultimately seek to recover any medical expenses in the action, because she reasoned that the medical care providers could not be held liable for the costs of treating the pre-existing, work-related injury. In Mr. Ulrich's view, the surgery would have been

5

required even if the healthcare providers had fully complied with the standard of care in all respects.

The Commissioner concluded that the County was not entitled to reimbursement for the cost of medical services necessary to treat the work-related injury. The Commissioner reasoned that the County would be entitled to reimbursement for the cost of any medical services "necessitated as a result of the medical malpractice." The Commissioner observed, however, that the County did not offer "any evidence" that the medical expenses were "related to malpractice" as opposed to the work-related injury.

On February 1, 2017, the Commission issued an order stating that Mr. Ulrich was entitled to retain all proceeds from the malpractice settlement, except that he must reimburse the County for temporary total disability benefits, after deducting a pro rata share of attorneys' fees and costs. The order stated: "The Employer/Insurer is not entitled to reimbursement for the medical costs paid from this injury. The treatment was necessary as a result of this injury and not as a result of the delay in treatment."

### E. Judicial Review of the Commission's Decision

Baltimore County petitioned for de novo judicial review of the Commission's decision in the Circuit Court for Baltimore County. Mr. Ulrich moved for summary judgment, contending that the County was not entitled to repayment for medical expenses out of the proceeds of the malpractice settlement. The County opposed his motion and made a cross-motion for summary judgment on the same issue.

In support of his motion, Mr. Ulrich asserted that he neither recovered nor sought to recover damages for medical expenses in the third-party malpractice action.

6

According to Mr. Ulrich, the surgery was necessary only because "he had an accidental injury at work that caused a distal biceps tendon rupture." He asserted that all of his medical expenses became necessary "from the moment he sustained that injury" and, thus, before any malpractice had occurred. The basis of his malpractice claim, he said, was that "the treatment was delayed, causing a permanent impairment in [the] strength and function of his arm." He maintained that he "did not and could not, legally, have recovered for the medical expenses" in the third-party malpractice case, because those expenses would have been incurred even if no malpractice had occurred. He contended that his employer could not recover through subrogation "that which wasn't claimed or recovered in the third-party case."

In response, Baltimore County agreed that the case involved "no dispute as to material facts" and presented "purely" an issue of statutory interpretation. The County did not challenge Mr. Ulrich's assertions that all medical expenses resulted solely from the work-related injury rather than the subsequent treatment. Instead, the County relied on its interpretation of LE § 9-902(e)(2)(ii), which generally states that if an employee recovers damages from a third-party tortfeasor who is liable for a work-related injury, the employee must reimburse the employer for "any amounts paid for medical services." The County contended that, under the "plain and unambiguous language" of LE § 9-902(e)(2)(ii), an employee who recovers any damages from a third-party tortfeasor must repay all amounts that an employer paid for medical services. The County argued that the statute included "no exception . . . excusing the employee from reimbursing the [employer] for amounts paid for medical services because such amounts weren't claimed

7

as damages in the third party action."

At a hearing on the summary judgment motions, the circuit court ruled in favor of

Mr. Ulrich. The court explained its decision as follows:

> The circumstances of this case do not fit within Labor and Employment 9-902 which presumes that there is a third-party tortfeasor potentially liable for the workplace injury. In fact, the preamble to Labor and Employment Article 9-901 is when a person other than an employer is liable for the injury or death of a covered employee for which compensation is payable under this title. In this case there is no person other than an employer liable for the injury.
>
> The purposes of Labor and Employment Article 9-902 are to prevent the party primarily liable from being unjustly enriched because someone else satisfies the liability and to prevent a Claimant from double dipping. Those concerns are not present here because there are discrete claims. One for the workplace injury and another one for the delayed diagnosis of the workplace injury.
>
> The traditional subrogation principles also do not apply in this case. Medical expenses related to the treatment of the ruptured tendon were not recovered in the medical malpractice case because the tendon was already ruptured. Baltimore County is not in a position to stand in the shoes of Mr. Ulrich to recover medical expenses on the back end of a lien against the medical malpractice settlement when Mr. Ulrich would not have been entitled to those medical expenses in the medical malpractice case.

The court concluded, therefore, that the County was not entitled to be reimbursed

for medical expenses out of the proceeds of the third-party settlement.

On September 5, 2018, the court issued an order granting Mr. Ulrich's motion for

summary judgment and denying Baltimore County's cross-motion, for the reasons stated

at the hearing. The court granted judgment in favor of Mr. Ulrich in the judicial review

action. Baltimore County noted a timely appeal from the judgment.

## DISCUSSION

In this appeal, Baltimore County contends that the decision of the Workers' Compensation Commission and the judgment of the circuit court are "erroneous as a matter of law." The County asserts that it is "clearly entitled" to reimbursement for medical expenses that it paid in the amount of $17,154.42, minus a proportionate share of fees and costs. The County presents a single question for review:

> Under LE §9-902 (e), was Baltimore County entitled, as a matter of law, to reimbursement of the funds it paid for medical expenses in Ulrich's workers' compensation claim out of the settlement proceeds from his medical malpractice case arising from care and treatment for the same injury?

Upon judicial review of a decision of the Commission, the court must determine whether the Commission "misconstrued the law and facts applicable in the case decided." LE § 9-745(c)(3). In the proceeding, "the decision of the Commission is presumed to be prima facie correct[.]" LE § 9-745(b)(1). This presumption of correctness, however, does not extend to legal determinations. *Montgomery Cty. v. Deibler*, 423 Md. 54, 60 (2011). The court should not uphold the decision if it is premised solely upon an error of law. *See* LE § 9-745(e); *Pro-Football, Inc. v. McCants*, 428 Md. 270, 283 (2012).

On review of the grant of summary judgment in a judicial review action, the appellate court considers the same matters decided by the trial court to determine whether the ruling was legally correct. *Central GMC, Inc. v. Lagana*, 120 Md. App. 195, 200 (1998). Review of a ruling on cross-motions for summary judgment typically "begins with the question of whether the [c]ircuit [c]ourt, in reviewing the Commission's decision, properly determined that there was no genuine dispute as to a material fact."

9

*Uninsured Employers' Fund v. Danner*, 388 Md. 649, 658 (2005). Here, both parties have stated that there is no factual dispute but only a disagreement over the meaning of a statute.

The proper interpretation of a statute is ordinarily a question of law. *Board of Educ. of Prince George's Cty. v. Marks-Sloan*, 428 Md. 1, 18 (2012). Accordingly, because the parties appear to "'agree on the facts, leaving the interpretation of [a statute] as the sole legal issue[,]' the appropriate standard of review is de novo." *Richard Beavers Constr., Inc. v. Wagstaff*, 236 Md. App. 1, 13 (2018) (quoting *Johnson v. Mayor & City Council of Baltimore*, 430 Md. 368, 376 (2013)).

The statute at issue here is the Maryland Workers' Compensation Act, codified at Title 9 of the Labor and Employment Article of the Maryland Code. The Act benefits covered employees who suffer accidental injuries arising out of and in the course of employment, regardless of whether the employer was at fault. *See* LE § 9-501. To that end, the Act obligates an employer to provide medical services and treatment to an employee who is injured on the job (*see* LE § 9-660) and to pay compensation to an employee who is unable to work because of a compensable injury (*see* LE §§ 9-614 through 9-642). The employer's statutory obligations serve as a substitute for the employer's common-law liability to pay damages when an employee is injured or disabled because of the employer's negligence. *See* LE § 9-509.

"The Act, however, neither excuses third[ ]parties from their own negligence nor limits their liability." *Great Atl. & Pac. Tea Co., Inc. v. Imbraguglio*, 346 Md. 573, 583 (1997). The General Assembly consistently has preserved the right to sue a third party

10

"[i]f a compensable injury . . . 'was caused under circumstances creating a legal liability in some person other than the employer to pay damages[.]'" *Board of Educ. of Prince George's Cty. v. Marks-Sloan*, 428 Md. at 38 (quoting *Clough & Molloy, Inc. v. Shilling*, 149 Md. 189, 195 (1925)). "'[T]he basic concept underlying third party actions is the simple moral idea that the ultimate loss from wrongdoing should fall upon the wrongdoer.'" *Id.* (quoting 2 Arthur Larson, *Workers' Compensation Law* § 71.10, at 165 (1997)). "'[I]t is elementary that if a stranger's negligence was the cause of injury to claimant in the course of employment, the stranger should not be in any degree absolved of his normal obligation to pay damages for such an injury.'" *Great Atl. & Pac. Tea Co., Inc. v. Imbraguglio*, 346 Md. at 583 n.4 (quoting 2A Arthur Larson, *The Law of Workmen's Compensation* § 71.10 (1996)).

The basic statutory framework to enforce third-party liability for compensable injuries has existed for nearly a century. *See Podgurski v. OneBeacon Ins. Co.*, 374 Md. 133, 145-47 & nn.6-7 (2003). The Act establishes a "two-pronged authorization" to sue a third party after an employee receives workers' compensation benefits. *Hubbard v. Livingston Fire Prot., Inc.*, 289 Md. 581, 585 (1981) (discussing former Md. Code, Art. 101, § 58). For two months after an award or payment of compensation, the employer has the "exclusive right" to bring suit "to recover from a third party who causes an injury to its employee any workers' compensation which the employer has been required to pay to its employee because of that injury." *Anne Arundel Cty. v. McCormick*, 323 Md. 688, 692 (1991). Thereafter, the employer and employee share a concurrent right to sue the third party. *Id.*

11

A "claim of the employer against the third party is by way of subrogation to the rights of the injured worker[.]" *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 222 (1985). Subrogation "is generally defined [as] 'the substitution of one person in the place of another, whether as a creditor or as the possessor of any other rightful claim.'" *Strong v. Prince George's Cty.*, 77 Md. App. 177, 181 (1988) (quoting *Government Emps. Ins. Co. v. Taylor*, 270 Md. 11, 21 (1973)). "'The statute does not create the right of action, but merely creates or preserves the right of subrogation for the benefit of the employer and employee as their interests may appear.'" *Smith v. Bethlehem Steel Corp.*, 303 Md. at 222 (quoting *Johnson v. Miles*, 188 Md. 455, 460 (1947)). This "right of subrogation against a third party responsible for the employee's injury exists apart from the Act; but the Act creates a method for enforcing it." *Saadeh v. Saadeh, Inc.*, 150 Md. App. 305, 314 (2003) (citing *Western Maryland Ry. Co. v. Employers' Liab. Assur. Corp.*, 163 Md. 97, 102 (1932)).[1]

After the two-month period in which the employer has the exclusive right to sue, the Act "allows an injured employee . . . to institute a tort action against a third party tortfeasor who caused the injury." *Board of Educ. of Prince George's Cty. v. Marks-Sloan*, 428 Md. at 33. When the employee sues the third party, "the employer retains a subrogation interest in the reimbursement of the workers' compensation funds it paid

---

[1] In an action to enforce the employer's subrogation rights, the employer must prove "that the injuries suffered by its employee were the result of the tort-feasor's negligence." *Strong v. Prince George's Cty.*, 77 Md. App. at 183. "'In that suit the measure of damages is the same as if the [employee] had proceeded against [the tort-feasor] in the first place.'" *Id.* at 182 (quoting *Maryland Cas. Co. v. Union Bridge Elec. Mfg. Co.*, 145 Md. 644, 650 (1924)).

12

pursuant to the Act[.]" *Podgurski v. OneBeacon Ins. Co.*, 374 Md. at 140. "The employer's subrogation interest in the third-party claim acts as a 'statutory lien' on any recovery the employee may obtain from the third[ ]party." *Franch v. Ankney*, 341 Md. 350, 358 (1996) (quoting Richard P. Gilbert & Robert L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 16.1-5, at 325 (2d ed. 1993, 1995 Cum. Supp.)).

An employer that recovers damages from a third party "is required to pay to the claimant any 'excess' recovery" over the amounts that the employer paid in benefits. *Collins v. United Pac. Ins. Co.*, 315 Md. 141, 145 (1989). Similarly, an employee who recovers damages "must first satisfy the subrogated interest of the [employer] out of the proceeds of any settlement or judgment" before keeping the balance. *Id.* This distribution ensures "that a neutral party, the employer, is not made to pay for damages caused by the actual at-fault party." *Podgurski v. OneBeacon Ins. Co.*, 374 Md. at 147-48. At the same time, this distribution "prevent[s] the injured employee from 'receiving a windfall recovery from both sources for the same damages.'" *Ross v. Agurs & Progressive Cas. Ins. Co.*, 214 Md. App. 152, 159 (2013) (quoting *Parry v. Allstate Ins. Co.*, 408 Md. 130, 136 (2009)).

At present, Subtitle 9 of Title 9 of the Labor and Employment Article governs the "Liability of Third Parties" for compensable injuries.[2] Section 9-901 generally "grants

---

[2] LE § 9-902 authorizes suits against a third party by a self-insured employer, a workers' compensation insurer, the Subsequent Injury Fund, or the Uninsured Employers' Fund. Because Baltimore County is a self-insured employer, this discussion is limited to the rights and obligations of injured employees and self-insured employers. If an employee's death is compensable under the Act, LE §§ 9-901 and 9-902 also authorize suits by the personal representative or dependents of a covered employee.

13

persons injured on the job a choice of remedies when their injury is caused by a third party who is not their employer." *Parry v. Allstate Ins. Co.*, 408 Md. at 136. It states, in pertinent part: "When a person other than an employer is liable for the injury . . . of a covered employee for which compensation is payable under this title, the covered employee . . . may: (1) file a claim for compensation against the employer under this title; or (2) bring an action for damages against the person liable for the injury[.]" LE § 9-901.

Next, the Act grants an employer that has paid compensation the right "to sue a third party whose tortious conduct cause[d] an employee's injuries[.]" *Chaney Enters. Ltd. P'ship v. Windsor*, 158 Md. App. 1, 18 (2004). "If a claim is filed and compensation is awarded or paid under this title," the employer "may bring an action for damages against the third party who is liable for the injury . . . of the covered employee." LE § 9-902(a). If the employer "recovers damages exceeding the amount of compensation paid or awarded and the amount of payments for medical services, funeral expenses, or any other purpose under Subtitle 6 of this title," the employer "shall: (1) deduct from the excess amount its costs and expenses for the action; and (2) pay the balance of the excess amount to the covered employee[.]" LE § 9-902(b).

The Act then defines the conditions under which the employee may sue the third-party tortfeasor. LE § 9-902(c) provides, in pertinent part, that if the employer "does not bring an action against the third party within 2 months after the Commission makes an award, the covered employee . . . may bring an action for damages against the third party." LE § 9-902(d) tolls the running of unexpired period of limitations on the employee's right of action against the third party during the two-month period when the

14

employer has the exclusive right to sue the third party. *See Hayes v. Wang*, 107 Md. App. 598, 600 (1996); *see also Smith v. Bethlehem Steel Corp.*, 303 Md. at 216-17.

Subsection (e) directs the distribution of damages recovered by an employee from a third-party tortfeasor. LE § 9-902(e) states, in pertinent part:

> (e) If the covered employee . . . recover[s] damages, the covered employee . . . :
>
>> (1) first, may deduct the costs and expenses of the covered employee . . . for the action;
>>
>> (2) next, . . . shall reimburse the self-insured employer . . . for:
>>
>>> (i) the compensation already paid or awarded; and
>>>
>>> (ii) any amounts paid for medical services, funeral expenses, or any other purpose under Subtitle 6 of this title; and
>>
>> (3) finally, may keep the balance of the damages recovered.

Subsection (f) concerns the allocation of litigation expenses. In actions brought by an employee, the employee and employer "shall pay court costs and attorney's fees in the proportion that the amount received by each bears to the whole amount paid in settlement of any claim or satisfaction of any judgment obtained in the case." LE § 9-902(f).

In general, the amount received by the employee in a third-party action "is in place of any award that otherwise could be made" under the Act and means that the workers' compensation case "is finally closed and settled." LE § 9-903(a). An exception, however, permits the employee to "reopen the claim for compensation to recover the difference between: (1) the amount of damages received by the covered employee . . . ; and (2) the full amount of compensation that otherwise would be payable" under the Act.

15

LE § 9-903(b).

In the present case, the County contends that, under the "plain and unambiguous language of LE § 9-902(e)," Mr. Ulrich is obligated to reimburse the County, out of the settlement proceeds from his malpractice action, for any amounts that the County paid for medical services. The County emphasizes that this subsection provides, in part, that when "the covered employee recover[s] damages, the covered employee . . . *shall reimburse* the self-insured employer[] . . . for: (i) the compensation already paid or awarded; and (ii) *any amounts paid for medical services*, funeral expenses, or any other purpose under Subtitle 6 of this title[.]" LE § 9-902(e)(2) (emphasis added). The County observes that this requirement to repay medical expenses is "mandatory." The County notes that the statute includes "no exception" for actions in which the employee chooses not to seek to recover damages for medical expenses in the third-party action.[3]

In support of its "plain language" argument, the County primarily relies on *Podgurski v. OneBeacon Insurance Co.*, 374 Md. 133 (2003). The employee in that case slipped and fell on water leaking from defective plumbing while she was working for her employer on premises controlled by a third party. *Id.* at 138. She pursued a workers' compensation claim and recovered $11,705.51 from her employer's insurer. *Id.* She also pursued a separate tort claim against the third party. *Id.* Through arbitration of her third-party claim, she was awarded a total of $90,000 for medical expenses, lost wages, and

---

[3] By phrasing the question in terms of the employee's "choice," the County avoided the question of whether the employer has the right to be reimbursed for all of the medical expenses that it incurred even if the employee has no legal right to recover some or all of those expenses from a third-party tortfeasor.

16

pain and suffering. *Id.* Before the arbitration, however, the third party filed for bankruptcy protection. *Id.* In the distribution of the bankruptcy estate, the employee received only $26,589.21, a small percentage (29.54%) of her original $90,000 arbitration award. *Id.* at 138-39. She argued that the insurer's lien also should be reduced to 29.54% of the original lien amount. *Id.* at 139.

The Court of Appeals concluded that the statute obligated the employee to repay the entire amount of $11,705.51 in workers' compensation benefits, except for the deduction for costs and fees. *Podgurski v. OneBeacon Ins. Co.*, 374 Md. at 145 & n.5. The Court reasoned "that the language of § 9-902(e)(2) is clear and unambiguously directs the . . . employee, under the circumstances here present, to fully reimburse the [employer's] insurer." *Id*. at 143-44. The Court stated:

> We hold that the plain language of § 9-902(e) is clear and unambiguous on its face; any argument that it is ambiguous is without merit. Once an employee *recovers damages* from a third party tort-feasor and deducts the proper costs and expenses, that employee *shall reimburse* the insurer or employer for the *compensation already paid or awarded* by the insurer as an award under the Act. The definitions of these italicized words from § 9-902 are patent. The Legislature provided no room or circumstance for instituting a limitation or exception permitting, once third party reimbursement is obtained, a reduction or total bar of the reimbursement amount.

*Podgurski v. OneBeacon Ins. Co.*, 374 Md. at 144 (italics in original).

Relying on that language, the County argues that "[t]he same" reasoning should apply to reimbursement of the medical expenses that it paid on behalf of Mr. Ulrich. Yet as Mr. Ulrich and the circuit court correctly recognized, the *Podgurski* Court applied LE § 9-902(e) under circumstances where an employee brought a third-party tort action

17

"arising out of the same incident that caused her compensable injury[.]" *Podgurski v. OneBeacon Ins. Co.*, 374 Md. at 136. Mr. Ulrich's third-party action, by contrast, arose out of the subsequent treatment of his compensable injury. The *Podgurski* opinion does not address reimbursement out of an employee's recovery from a third party who was not liable for the underlying compensable injury. *Podgurski* certainly does not address whether an employee must reimburse an employer for expenses that the employee did not and could not recover from a third-party tortfeasor.

To determine how to apply the statute in these circumstances, we do not read statutory language in a vacuum, nor do we strictly confine our interpretation of a statute's plain language to the isolated section alone. *Board of Educ. of Prince George's Cty. v. Marks-Sloan*, 428 Md. 1, 19 (2012) (quoting *Board of Cty. Comm'rs of St. Mary's Cty. v. Marcas, L.L.C.*, 415 Md. 676, 685 (2010)). Courts "give the words of the statute their 'ordinary and common meaning within the context in which they are used.'" *Chaney Enters. Ltd. P'ship v. Windsor*, 158 Md. App. 1, 25 (2004) (quoting *Polomski v. Mayor & City Council of Baltimore*, 344 Md. 70, 75 (1996)). "When, as here, a statutory provision is part of a statutory scheme, 'all sections of the Act must be read together,'" and not examined "as if they are 'isolated, independent sections.'" *Id.* (citations and quotation marks omitted). The statute "must be examined as a whole and the interrelationship or connection among all its provisions" should be considered. *Vest v. Giant Food Stores, Inc.*, 329 Md. 461, 466-67 (1993).

These general principles are particularly important for the proper interpretation of LE §§ 9-901 through 9-903. These three sections are "logically related" to each other.

*Saddeh v. Saddeh, Inc.*, 150 Md. App. 305, 313 (2003). The language of all three sections is "derived without substantive change" from a single source: former Article 101, § 58, of the Maryland Code. *See* 1991 Md. Laws ch. 8, § 2, Revisor's Notes to LE §§ 9-901, 9-902, and 9-903. The General Assembly enacted the entire subtitle when it "revise[d], restate[d], and recodif[ied]" the State's workers' compensation laws in the process of adopting the Labor and Employment Article. 1991 Md. Laws ch. 8, preamble.

The Court of Appeals has concluded that the statutory lien, now codified at LE § 9-902(e), is limited to the types of third-party actions described in the introductory language, now codified at LE § 9-901. In *Erie Insurance Co. v. Curtis*, 330 Md. 160 (1993), the Court considered whether the statute, before its recodification, created a lien against an employee's recovery under the uninsured motorist coverage of an automobile insurance policy. *Id.* at 161-62. To answer that question, the Court looked to the introductory clauses stating:

> "Where the injury . . . for which compensation is payable under this article was caused under circumstances creating a legal liability in some person, other than the employer, to pay damages in respect thereof, the employee . . . may proceed either by law against that other person to recover damages or against the employer for compensation under this article, or in case of joint *tort feasors* against both[.]"

*Id.* at 165 (emphasis in original) (quoting former Md. Code, Art. 101, § 58).

The Court reasoned that this language "refers solely to an action against a third party tort-feasor." *Erie Ins. Co. v. Curtis*, 330 Md. at 168-69. Observing that a claim under uninsured motorist coverage sounds in contract, not in tort, the Court determined that "a workers' compensation carrier[] has no claim," under the statute "against the

19

proceeds of [an employee's] contract action" under an automobile liability insurance policy. *Id.* at 169. The Court noted that its "resolution of [the] case would not differ" under "§§ 9-901 to 9-903 of the Labor and Employment Article, rather than Article 101, § 58." *Id.* at 164 n.1.

In the present case, Mr. Ulrich argues that the introductory language should determine the scope of the County's statutory lien. He argues that, "in order for §§ 9-901 and 9-902 to even come into play, there must be 'a person other than the employer' who is 'liable for the injury . . . of a covered employee' for which 'compensation is payable.'" In his view, the statute establishes subrogation rights in an employee's third-party recovery only to the extent that the employee recovers damages for which the third party and the employer share liability.

We agree that the meaning of LE § 9-902(e) must be understood in the context of the provisions that precede it. The entire subtitle governs situations in which "a person other than an employer is liable for the injury . . . of a covered employee for which compensation is payable under" the Act. LE § 9-901. A self-insured employer that has paid compensation "may bring an action for damages against the third party who is liable for the injury . . . of the covered employee." LE § 9-902(a). If the employer does not bring such an action within two months after an award, then the employee "may bring an action for damages against the third party." LE § 9-902(c). If the employee recovers damages in that action, the employee "first, may deduct the costs and expenses . . . for the action;" "next, . . . shall reimburse" the employer for "(i) the compensation already paid or awarded; and (ii) any amounts paid for medical services . . . or any other purpose

20

under Subtitle 6 of [the Act];" and "finally, may keep the balance of the damages recovered." LE § 9-902(e). Reading the provision in proper context shows that an employer's statutory lien arises only when an employee recovers damages in an action against a person, other than the employer, who is liable for the injury of an employee for which compensation is payable under the Act.

The Court of Appeals has consistently treated the phrase "third party who is liable for the injury" as a shorthand description of a person who caused the employee's work-related injury. *See Board of Educ. of Prince George's Cty. v. Marks-Sloan*, 428 Md. 1, 33 (2012) (stating that LE § 9-902 "allows an injured employee . . . to institute a tort action against a third party tortfeasor who caused the injury"); *Parry v. Allstate Ins. Co.*, 408 Md. 130, 136 (2009) (stating that LE § 9-901 "grants persons injured on the job a choice of remedies when their injury is caused by a third party who is not their employer"); *Podgurski v. OneBeacon Ins. Co.*, 374 Md. 133, 139-40 (2003) (stating that the Act authorizes suits "[w]here a third party's actions result in the employee's injury"); *Franch v. Ankney*, 341 Md. 350, 358 (1996) (stating that the Act permits an employer to sue where "the employee's injury resulted from the tortious conduct of a third[ ]party"); *see also Great Atl. & Pac. Tea Co., Inc. v. Imbraguglio*, 346 Md. 573, 583 (1997) (stating that LE §§ 9-901 and 9-902 authorize actions against a third party "responsible for the injury").

The former version of the statute explicitly referred to the cause of the injury. It began by granting a choice of remedies "[w]here the injury . . . for which compensation is payable under this article was caused under circumstances creating a legal liability in

21

some person, other than the employer, to pay damages in respect thereof[.]"  Md. Code (1957, 1985 Repl. Vol.), Art. 101, § 58.  Because "LE §§ 9-901 through 9-903 are a re-codification" of this provision and "for the most part, substantively identical" to their predecessor, we presume that the revisions made during recodification were "for the purpose of clarity rather than change of meaning[.]"  *Youmans v. Douron*, 211 Md. App. 274, 285 (2013) (citation and quotation marks omitted).  Thus, the phrase "third party who is liable for the injury" fairly connotes a third party who caused the injury for which compensation is payable under the Act.

Accordingly, "[a] subrogation claim arises under the Act when an employee suffers a work related injury because of the actions of a third party tortfeasor."  *Chaney Enters. Ltd. P'ship v. Windsor*, 158 Md. App. 1, 33 (2004).  "In contrast, a work related accident that is not the fault of a third party does not give rise to a subrogation claim."  *Id*.

It is axiomatic that, to recover damages in a tort action, a plaintiff must prove that the defendant's tortious conduct caused the plaintiff's injury.  *See, e.g.*, *Mayer v. North Arundel Hosp. Ass'n, Inc.*, 145 Md. App. 235, 245 (2002).  Generally, "a negligent actor is liable not only for harm that he [or she] directly causes but also for any additional harm resulting from normal efforts of third persons in rendering aid, irrespective of whether such acts are done in a proper or a negligent manner."  *Morgan v. Cohen*, 309 Md. 304, 310 (1987).  "When a physician negligently treats the injuries, [the physician] also becomes liable to the plaintiff, but only for the additional harm caused by [the physician's] negligence."  *Id.* (citing Restatement (Second) of Torts § 433A, cmt. c

(1964), and William Prosser & W. Page Keeton, *The Law of Torts* § 52, at 352 (5th ed. 1984)).

Consistent with these principles, the "complications flowing directly from treatment of a compensable injury are covered by the [Workers' Compensation] Act, even if the complications result from negligent medical treatment." *Mackin & Assocs. v. Harris*, 342 Md. 1, 5 (1996). The "second injury" is "also compensable" under the Act, "where the claimant, as the result of malpractice by a physician engaged to treat the initial work-related injury, suffers an aggravation of the original injury." *Young v. Hartford Accident & Indem. Co.*, 303 Md. 182, 191-92 (1985). Therefore, "the employer must pay compensation under the Act for the aggravation of a claimant's medical condition due to medical malpractice in the treatment of a workplace injury." *Suburban Hosp., Inc. v. Kirson*, 362 Md. 140, 157 (2000).

As Baltimore County points out, this Court has held that an employer or insurer may be entitled to reimbursement out of the proceeds of an employee's third-party claim for malpractice in the treatment of a work-related injury. *Nazario v. Washington Adventist Hosp., Inc.*, 45 Md. App. 243, 246, *cert. denied*, 288 Md. 740 (1980). In that case, the employee injured his eye on the job, received medical treatment, and lost the eye a few days later. *Id.* at 244. Pursuant to a workers' compensation claim, his employer's insurer paid $25,605.00 for disability benefits and $3,318.75 for medical expenses. *Id.* The employee also brought a malpractice action against his healthcare providers and settled that claim for $25,000. *Id.* at 244-45. This Court held that the insurer was entitled to reimbursement in the amount of $25,000, minus attorneys' fees

23

and expenses. *Id.* at 245-46. The employee argued that the insurer should have no right to receive any of the settlement proceeds, on the theory that the malpractice claim was "entirely separate and unrelated" to the workers' compensation claim. *Id.* at 246. This Court rejected that argument, observing that a workers' compensation award "includes any aggravation of an injury which may have occurred through a physician's or hospital's negligence." *Id.*

As one author has observed, the *Nazario* opinion does "not specifically address the issue of whether a lien on the malpractice recovery is limited to the additional workers' compensation benefits caused by the injuries which formed the basis for the malpractice claim." Clifford B. Sobin, *Maryland Workers' Compensation* § 20:6 (Sept. 2019). In many instances, some expenses will be attributable solely to the compensable injury, while other expenses will be attributable to the negligent treatment of that injury. In those situations, permitting the employer to be repaid for all of its expenses out of the malpractice proceeds would "amount[] to a windfall for the employer[.]" *Id.* The employer "would then be recovering for the underlying injury that was not caused by the malpractice" and would be recovering amounts that "would have been paid even if there was no malpractice." *Id.* It seems unlikely that the statute was intended to produce this result.

Generally, the "'plain language'" of a statute "'must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the [l]egislature in enacting the statute.'" *Board of Educ. of Prince George's Cty. v. Marks-Sloan*, 428 Md. at 19 (quoting *Board of Cty. Comm'rs of St. Mary's Cty. v. Marcas,*

24

*L.L.C.*, 415 Md. at 685). The Court of Appeals has explained that LE § 9-902 evinces "a legislative intent to ensure that a neutral party, the employer, is not made to pay for damages caused by the actual at-fault party." *Podgurski v. OneBeacon Ins. Co.*, 374 Md. at 147-48. The "purpose of the statute is to protect both the employee and the employer by ensuring that a third party tort-feasor will not escape liability by having another pay its debt." *Id.* at 148 (emphasis omitted) (citing *Johnson v. Miles*, 188 Md. 455, 460 (1947)). Additionally, the "reimbursement requirement precludes 'double dipping' by the claimant." *Podgurski v. OneBeacon Ins. Co.*, 374 Md. at 154 (quoting *Chesapeake Haven Land Corp. v. Litzenberg*, 141 Md. App. 411, 420 (2001)). "In those situations in which the person injured on the job brings an action against and recovers damages from the third-party tortfeasor, following a workers' compensation award or payment of compensation, § 9-902 prevents the person from receiving a windfall recovery from both sources for the same damages." *Parry v. Allstate Ins. Co.*, 408 Md. 130, 136 (2009).

More generally, Maryland courts "have recognized consistently that the allowance to [an employer or insurer] of an interest in a third-party recovery obtained by a claimant is a right of subrogation." *Chesapeake Haven Land Corp. v. Litzenberg*, 141 Md. App. at 416. Subrogation "provide[s] relief against loss and damage to a meritorious creditor who has paid the debt of another." *Podgurski v. OneBeacon Ins. Co.*, 374 Md. at 140 (citation and quotation marks omitted). The basic "rationale underlying the doctrine of subrogation is to prevent the party primarily liable on the debt from being unjustly enriched when someone pays his debt." *Id.* at 140-41 (citation and quotation marks omitted). Subrogation is designed "to compel the ultimate payment of a debt by one,

25

who, in justice, equity, and good conscience, should pay it." *Id.* at 141 (citation and quotation marks omitted).

Mr. Ulrich argues that requiring an employee to repay all medical expenses out of a third-party recovery, where the employee has no right to recover those same medical expenses in a tort action against the third party, would subvert the purpose of the statute. He cites two cases in which this Court rejected an attempt to use the statute to establish a subrogation interest in damages that an employee recovered from a third party, where those damages did not intersect with benefits payable under the Act.

First, in *Brocker Manufacturing and Supply Co. v. Mashburn*, 17 Md. App. 327, 340-41 (1973), this Court held that an employer and insurer had no right to "participate in the proceeds" that an injured employee's wife recovered from a third party in settlement of a claim for loss of consortium. The Court "perceive[d]" nothing "that would justify the [employer and insurer] being subrogated to any of [the wife's] claim," where the employer and insurer "did not, nor were they legally obligated to, pay any sum" to the employee's wife for loss of consortium. *Id.* at 340.

Second, in *Chesapeake Haven Land Corp. v. Litzenberg*, 141 Md. App. 411 (2001), *cert. denied*, 368 Md. 239 (2002), this Court addressed whether the subrogation interest of an employer or insurer might extend to an employee's recovery of damages for future lost income from a secondary business in which he was self-employed. *Id.* at 416.[4]

---

[4] The *Brocker* and *Litzenberg* cases do not concern direct repayment from a third-party recovery, but indirect reimbursement, in the form of a credit against future workers' compensation benefits. Nevertheless, "the 'lien' aspect" and "the 'credit' concept" share

26

The employee argued that the insurer had no right of subrogation in the damages relating to his secondary business, because those damages were not part of the insurer's past or future obligation to him under the Act. *Id.* at 415, 418-19. The insurer responded that LE § 9-902 did not expressly authorize the Commission to exclude those damages from the insurer's right of subrogation. *Id.* at 415, 418. Noting that the "reimbursement requirement precludes 'double dipping' by the claimant," this Court reasoned that the insurer's subrogation interest "should be calculated from that portion of the third-party recovery attributable to benefits paid or payable" by the employer or insurer. *Id.* at 420. Because "an injured worker's earnings in self-employment are excluded from the calculation of benefits to be paid by the compensation insurer," the Court concluded that "third-party recoveries for those losses cannot be considered as part of the [employer's or] insurer's subrogation interest." *Id.* at 421.

Mr. Ulrich's case presents something of a mirror image of *Litzenberg*. There, the subrogation interest codified in LE § 9-902 did not extend to part of an employee's injury for which the third party was liable and for which an employer could never be required to pay benefits under the Act. Here, the question is whether this subrogation interest includes part of an employee's injury for which the employer alone had an obligation and for which the third party could never be liable in tort.

Requiring the employee to repay the employer for expenses that the employer alone was obligated to pay, and for which no third person was ever liable to pay the

---

a common statutory source and "should be resolved in like fashion." *Chesapeake Haven Land Corp. v. Litzenberg*, 141 Md. App. at 420.

27

employee, fails to serve the purposes of either the statute or of subrogation doctrine.  In those circumstances, the benefits paid by the employer do not coincide with any damages recoverable from the third party.  The employee has not received "a windfall recovery from both sources for the same damages."  *Parry v. Allstate Ins. Co.*, 408 Md. at 136.  Likewise, the employer has not paid "for damages caused by the actual at-fault party." *Podgurski v. OneBeacon Ins. Co.*, 374 Md. at 148.  There is no risk that a culpable tortfeasor will be "unjustly enriched" (*id.* at 141) by "having another pay its debt."  *Id.* at 148.  The "ultimate payment of [the] debt" (*id.* at 141) has already been made by the only party with an obligation to pay it.

The precondition for the statutory right of reimbursement under LE § 9-902 is that "a person other than an employer is liable for the injury . . . of a covered employee for which compensation is payable under" the Act.  LE § 9-901.  A third-party healthcare provider that treats an injury arising out of and in the course of employment, but does not cause that compensable injury, is not liable for that injury.  The third-party healthcare provider is liable only for additional harm caused by negligent treatment.  *See Morgan v. Cohen*, 309 Md. 304, 310 (1987).  Where an employer pays for medical services exclusively to treat the compensable injury (not to treat any additional harm from medical negligence), the employer has no subrogation interest in repayment of those medical expenses out of a third-party recovery for negligent treatment.  The employer is not "entitled to a 'windfall'" (*Chesapeake Haven Land Corp. v. Litzenberg*, 141 Md. App. at 419) of reimbursement from the employee for something that the employee has no legal right to recover from the third party.  An injury from medical negligence should not make

28

the employer better off than it would have been if the medical negligence had never occurred.[5]

It is undisputed here that the third parties, Mr. Ulrich's healthcare providers, were not liable for the initial injury arising out of and in the course of his employment. Throughout this case, Mr. Ulrich asserted that medical malpractice did not cause him to incur any medical expenses. He maintained that he "did not 'double dip' on medical expenses[,]" because he did not and could not have recovered damages for those expenses in his malpractice case. The decisions of the Workers' Compensation Commission and the circuit court both relied on the premise that no party other than Baltimore County was liable for any of $17,152.42 of medical expenses that the County paid. A review of the record shows that the County did not challenge that premise during the proceedings in the Commission or in the circuit court. Rather, the County argued that Mr. Ulrich's assertions were immaterial because, under its reading of the statute, the County would be entitled to reimbursement for all medical expenses "out of any third-party recovery" by Mr. Ulrich, regardless of whether a third-party tortfeasor had caused

---

[5] In support of his argument, Mr. Ulrich also invokes the principle that the Workers' Compensation Act "is remedial in nature and 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes.'" *Gang v. Montgomery Cty.*, 464 Md. 270, 279 (2019) (quoting *Stachowski Sysco Food Servs. of Baltimore, Inc.*, 402 Md. 506, 513 (2007)). That principle carries minimal weight here, because these "benevolent purposes" are typically satisfied if "a covered employee receives all the benefits to which [he or] she is entitled under the Act." *Podgurski v. OneBeacon Ins. Co.*, 374 Md. at 143.

29

those damages or was legally liable for them.[6]

The County's interpretation of LE § 9-902(e) is unpersuasive. A proper interpretation requires us to read that provision within the context of the entire statutory scheme and in light of the statute's purpose of providing a method for enforcing subrogation rights. When an employer pays for medical services to treat the part of an injury for which no third party other than the employer is liable, and where the employee recovers no sums for those medical expenses, the employer is not entitled to be reimbursed for those expenses out of the employee's recovery from a third party.

Baltimore County has failed to show that the Commission's decision was premised on an error of law. The judgment of the circuit court, which confirmed the decision of the Commission, is affirmed.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[6] In its brief, Baltimore County noted that the initial malpractice complaint mentioned some unspecified medical expenses, but the County did not argue that Mr. Ulrich actually did recover, or that he could have held his healthcare providers liable for, the medical expenses paid by the County. At oral argument, the County suggested that it is perhaps an overstatement to say that the entire $17,152.42 of medical expenses resulted solely from the work-related injury: that figure might include payments for additional or unnecessary treatment which would not have been performed but for the alleged misdiagnosis. The County did not raise that issue in the Commission, in the circuit court, or in its appellate brief. Therefore, it is not properly before this Court. *See Applied Indus. Techs. v. Ludemann*, 148 Md. App. 272, 287 (2002).

30